LEONARD SMORAL et al., Appellants, *v.* HANOVER INSURANCE COMPANY, Respondent.

First Department, June 15, 1971.

24

*Howard Lester* of counsel (*Sheila L. Birnbaum* with him on the brief; *Emile Z. Berman* and *A. Harold Frost,* attorneys), for appellants.

*William F. McNulty* for respondent.

STEUER, J.   The individual plaintiff (Smoral) was driving an automobile owned by Syracuse Jerome Motors when the car was in an accident in which Whittaker, a passenger in the car, was severely injured.   The car was insured by defendant Hanover, which upon merger assumed the obligation of a policy issued by Massachusetts Bonding and Insurance Company. Whittaker instituted suit against Smoral, as driver, and Syracuse Jerome Motors and its president, Jerome Goldberg, as owners.   Some question existed at the time as to whether Smoral had in fact purchased the car prior to the accident, and Hanover disclaimed liability as to him.   Smoral had a policy with Glens Falls Insurance Company and he notified that company of Hanover's disclaimer.   Glens Falls brought an action against Hanover in which it was determined that Smoral had not bought the car and that he was an insured under the Hanover policy. Hanover then undertook to represent Smoral in the Whittaker action.

The Hanover policy had a limit of $50,000.   Hanover, seeing no defense to the action and believing that Whittaker's damages exceeded the policy limit, agreed with Whittaker to pay the entire $50,000 in return for a release to Syracuse and Goldberg.   The

release specifically reserved all rights against Smoral. Smoral was given no notice of these negotiations and gave no consent to Hanover's actions. Hanover continued to represent Smoral. When the case appeared for trial the Trial Judge, on learning of the settlement, found that Hanover had an adverse interest to Smoral and directed Hanover's attorneys to withdraw, which they did. Glens Falls then assumed the defense of the Whittaker action and settled it for $32,500 in behalf of Smoral. Thereupon Smoral and Glens Falls, as subrogee, brought this action to recover all or part of the $32,500 paid on the settlement and for the reasonable value of the legal services rendered in that action.

Trial Term dismissed the complaint. This was upon the theory that Glens Falls was the sole party in interest. As Glens Falls was in the position of an excess insurer and as such was not entitled to any notice from the primary insurer as to the progress of the action against its insured, Trial Term held that no duty was violated. The rights of Smoral are entirely different. While Hanover owed no duty to Smoral's insurer, it was itself Smoral's insurer and it owed a duty of good faith to him (*Best Bldg. Co.* v. *Employers' Liab. Assur. Corp.*, 247 N. Y. 451; *Cappano* v. *Phoenix Assur. Co. of N. Y.*, 28 A D 2d 639). Good faith in this connection means more than an absence of intent to harm. It means an adequate protection of the interests of the assured (*Cappano* v. *Phoenix Assur. Co. of N. Y., supra,* p. 640). While this duty has most frequently been considered where the interests of the company have been preferred to the detriment of the insured (*Brown* v. *United States Fid. & Guar. Co.*, 314 F. 2d 675), the same considerations would apply with equal force where the company preferred one of its insureds over another. It is absolutely no answer for the company to say that it paid the full amount of its policy if in so doing it fully protected one of its insureds and left the other completely exposed. While it is easy to see why Hanover acted as it did — the insured it protected was a policyholder, the one whose rights it ignored was an insured it was by law required to defend — there is no legal justification for its preferring one over the other.

While the breach by the defendant of its duty to Smoral is clear, the damage caused by the breach does present difficult questions. At least, Smoral would have been entitled to legal representation, and defendant's voluntary conduct in putting itself in an equivocal position amounting to a conflict of interest effectually denied that benefit to him. The reasonable value of such services would seem an incontestable item of damage. As the complaint was dismissed we are not faced with questions

as to whether any particular item or theory of damage is tenable. Such questions will be resolved when met. Suffice it to say we are not impressed by the contention advanced that a greater value was put on the Whittaker claim and hence a greater amount was apportionable to Smoral's liability by the settlement. This highly theoretical proposition is incapable of resolution with a reasonable degree of certainty. Rather we would incline to the view as to what proportion of the settlement fund should have been, in good faith, allotted to relieving or reducing Smoral's liability.

The judgment entered March 1, 1968, should be reversed on the law and a new trial ordered, with costs and disbursements to abide the event.

MACKEN, J. (dissenting). I disagree with the majority's assertion that there is no legal justification for Hanover's preferring its other insureds, Syracuse and Goldberg, over Smoral, which I assume to mean that without Smoral's consent Hanover in good faith might not settle the case without obtaining his release.

The accident occurred when Smoral fell asleep while driving on the New York State Thruway and his car left the road and overturned. It is not seriously disputed that the action brought by the passenger Whittaker, Smoral's sister-in-law, was one of clear liability. The limit of the Hanover policy was $50,000 and of Glens Falls' $100,000. That the case had a value in excess of $50,000 is evidenced by the subsequent payment by Glens Falls of an additional $32,500. Up to and including the time of the conference resulting in the settlement by Hanover, the lowest settlement demand was $100,000, Whittaker's attorney apparently having gained the impression that the limit of the Glens Falls policy was also $50,000. When presented the opportunity of obtaining releases of Syracuse and Goldberg upon payment of its limit of liability, Hanover had the choice of accepting it or proceeding to trial faced with a potential meritorious good faith action by Syracuse and Goldberg in the event the verdict exceeded $50,000. In these circumstances I see no legal or equitable obstacle to Hanover's proceeding as it did. Whether it acted in good faith toward Smoral must be determined from all of the circumstances. It was aware Smoral had substantial excess coverage and even if such were not the case, no benefit would enure to him by exposing Syracuse and Goldberg to a judgment in excess of the limit of Hanover's policy. In such event, as the active tort-feasor Smoral would be entitled to no contribution from Syracuse or Goldberg and, on the contrary, would be obliged to indemnify the latter for any such amounts they were required to pay (*Traub* v. *Dinzler*, 309 N. Y. 395).

Why Hanover did not bring Glens Falls into the conference resulting in the settlement and failed to notify either it or Smoral that the settlement had been effected until several months later when the case was reached for trial escapes me. Assuming that it had no legal obligation to Glens Falls, simple courtesy required that it do so. As to its insured Smoral, although it might have been a futile gesture, if we must close our eyes to the existence of the Glens Falls policy good faith required Hanover to advise Smoral of the status of the negotiations and afford him an opportunity to negotiate for a release before committing itself to the settlement.

But assuming a breach of Hanover's obligation to Smoral to the extent indicated, I see no evidence of damage aside from the legal expense incurred after the withdrawal of Hanover's attorneys. Hanover's liability for such expense is clear (*Fidelity Gen. Ins. Co.* v. *Ætna Ins. Co.*, 27 A D 2d 932). Plaintiff's principal claimed damage is that by reason of the settlement and its inferred admission of liability the amount of a jury's verdict would be enhanced and that they were therefore obliged to pay more in settlement than would have been required had they been afforded an opportunity to negotiate before the Glens Falls settlement. I agree with the majority that this contention is without merit, assuming as it does that a jury would disregard the court's instructions as to the significance of the prior payment. I am unable, however, to follow the majority's conclusion that an issue may be presented '' as to what proportion of the settlement fund should have been, in good faith, allotted to relieving or reducing Smoral's liability ''. Being the active tort-feasor, Smoral's liability was reduced by the entire amount of the payment.

The judgment appealed from should be modified to the extent of remanding the case for assessment of the legal expense incurred by plaintiffs after the withdrawal of Hanover's attorneys and otherwise affirmed, without costs to either party.

McGivern, J. P., Markewich and Kupferman, JJ., concur with Steuer, J.; Macken, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on March 1, 1968, reversed, on the law, and vacated, and a new trial directed, with costs and disbursements to abide the event.