PEKIN INSURANCE COMPANY, Plaintiff-Appellee, v. HOME INSUR-
ANCE COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   No. 84—0769

Opinion filed June 7, 1985.

Sandra Young, of Purcell & Wardrope, Chartered, of Chicago, for appellant The White Sox Baseball Club, Inc.

Michael M. Marick, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant-appellant White Sox Baseball Club, Inc. (White Sox or Sox) appeal from a declaratory judgment in favor of plaintiff-appellee Pekin Insurance Company (Pekin). The challenged order held that Pekin had no further duty to either indemnify or defend the White Sox in an action brought against the Sox by Joseph Vilet (Vilet). On appeal, the Sox contend that (1) Pekin's failure to indemnify and defend in the aforementioned action constitute a breach of the duty of good faith and fair dealing, and (2) as a consequence of the breach, Pekin is liable for any judgment or settlement as well as all defense costs incurred in the upcoming litigation.

On August 22, 1978, John S. Elder (Elder) was involved in an automobile accident with Vilet. At the time of the accident, Elder was operating his own vehicle, which had been insured under a liability policy by Pekin (the policy). The policy indicated that Pekin would pay up to $25,000 for bodily injury liability incurred by an insured party. The omnibus provision of the policy defined an insured party as "the named insured *** and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured ***." At the time of the accident, Elder was acting as an agent and an employee of the White Sox.

On March 22, 1979, Pekin obtained from Vilet a covenant not to sue Elder (the covenant) in return for a payment of $25,000, the personal injury limit of the policy. The covenant, however, did not relieve or limit the liability of the White Sox. The covenant expressly stated that Vilet reserved "any and all causes of action which he might have against *** the White Sox." The covenant and consequent settlement were negotiated by Pekin, without notice to either the Sox or the Sox insurer, Home Insurance Company (Home).

On June 19, 1979, Vilet filed suit against the White Sox in the circuit court of Cook County. On March 4, 1982, Home, on behalf of the Sox, notified Pekin concerning the action brought by Vilet. On May 20, 1982, Pekin wrote to both Home and the Sox, informing them that it

had retained defense counsel to represent the Sox in the upcoming litigation with Vilet. Pekin, however, indicated that any defense of the Sox would be under a reservation of right whereby Pekin neither waived any right nor admitted any obligation for liability to the Sox. In its letter to the Sox, Pekin explained that it would offer only this type of defense since it had already exhausted the personal injury liability limits of the policy. On August 23, 1982, Home wrote to Pekin, charging that the covenant with Vilet constituted bad faith on Pekin's part. In addition, Home, on behalf of the Sox, rejected a reservation-of-rights defense. Home stated that it would defend the Sox in the pending suit, but that it would look to Pekin for total indemnification for any judgment or settlement, together with all costs and attorney fees incurred.

On December 1, 1982, Pekin filed a complaint for declaratory judgment asking for a declaration that Pekin had fulfilled both its obligation to indemnify and its duty to defend the Sox in the suit with Vilet. Following cross-motions for judgment on the pleadings, the trial court entered judgment for Pekin. The court ordered that Pekin's duty to indemnify had terminated upon payment of the $25,000 policy limit, and that Pekin's duty to defend had terminated upon the Sox's rejection of Pekin's offer of counsel. Subsequently, the Sox filed the present appeal.

OPINION

■ The major basis for the appeal is the Sox' contention that Pekin has breached the duty of good faith and fair dealing which it owes the White Sox as an insured party under the policy. The Sox contend that the execution of the covenant with Vilet was bad faith and, therefore, evidence of Pekin's breach of duty. The initial basis for this contention is the Sox' assertion that the negotiations and settlement with Vilet were conducted without notice to the Sox. Additionally, the Sox argue that the covenant protects Elder at the Sox's expense, thus improperly preferring one insured party over another. The Sox maintain that both of these actions demonstrate bad faith on Pekin's part.

It is well established that an insurer has a duty to exercise good faith and to deal fairly with all parties insured by its policies. (*Bailey v. Prudence Mutual Casualty Co.* (7th Cir. 1970), 429 F.2d 1388, 1390; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 476, 430 N.E.2d 1104.) Further, an insurer who breaches this duty will be liable for the tort of bad faith. (*Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 350, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d

75.) However, this court will only recognize a bad-faith claim when an insurer has acted in a vexatious, unreasonable, or outrageous manner towards its insured parties. *Siegal v. Health Care Service Corp.* (1980), 81 Ill. App. 3d 784, 793, 401 N.E.2d 1037; *Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d 469, 376 N.E.2d 1073.

Here, the Sox maintain that both the failure to notify and the terms of the covenant constitute bad faith. It is doubtful, however, that these actions rise to the unreasonable and outrageous level of behavior required for a bad-faith claim in Illinois. Furthermore, examination of the consequences of Pekin's actions makes a showing of bad faith even more problematic. Initially, if Vilet proves damages of $25,000 or less, he will recover nothing, since trial damages may be reduced by whatever amount has been paid in consideration for a covenant not to sue. (*Dial v. City of O'Fallon* (1980), 81 Ill. 2d 548, 558, 411 N.E.2d 217.) Thus, the covenant does not leave the Sox totally unprotected as they have argued. If Vilet proves damages in excess of $25,000, the White Sox will be liable for the excess amount. This result, however, would have occurred without the execution of the covenant since the maximum personal injury liability under the policy was only $25,000. In short, execution of the covenant fails to demonstrate any real injury to the Sox, much less the unreasonable and outrageous behavior required for a bad-faith claim.

The White Sox, however, contend that a contrary conclusion is indicated by *Smoral v. Hanover Insurance Co.* (1971), 37 App. Div. 2d 23, 322 N.Y.S.2d 12, and *Ivy v. Pacific Automobile Insurance Co.* (1958), 156 Cal. App. 2d 652, 320 P.2d 140. This contention, however, is not viable for several reasons. Initially, these cases, as foreign law, are merely persuasive and not controlling authority in Illinois. Further, both *Smoral* and *Ivy* imply good-faith standards not presently operative in this jurisdiction. Finally, both cases are factually different from the present action in that they both involve a breach of duty occurring while the insurer was actively representing the insured in litigation. Thus, neither *Smoral* nor *Ivy* is applicable here.

■ Characterization of Pekin's failure to defend as bad faith is equally groundless. It is undisputed that an insurer has an obligation to defend all insured parties, including those additionally insured under omnibus provisions. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) The insurer, however, is not always required to provide an unconditional defense for an insured. When policy coverage or insurer liability is in question, an insurer may either defend the suit in question under a reservation of right, or, in

the alternative, seek a declaratory judgment defining the insurer's rights and obligations. (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 199, 193 N.E.2d 123.) Here Pekin initially offered to defend the Sox under a reservation of right. When this offer was rejected, Pekin then sought a declaration of its rights and duties under the Elder policy. Thus, Pekin has obviously avoided a bad-faith action by doubly fulfilling its duty to defend.

■ Nonetheless, the White Sox maintain that Pekin's defense with reservation creates an impermissible conflict of interest. The Sox argue that this conflict is created by the fact that Pekin is interested in keeping litigation costs to a minimum while the White Sox wish to obtain a full and vigorous defense. The Sox contend that, because of this conflict, they not only may choose their own defense attorneys, but also may require Pekin to pay any attorney fees incurred. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 152, 384 N.E.2d 335.) Illinois, however, has only recognized two situations wherein the conflict of interest would be so great as to require the retention of outside counsel. These situations have involved either conflicts between two parties covered by the same insurer (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079) or circumstances wherein proof of certain facts would move liability from the insurer to the insured. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) Since the facts here do not fit within either of these exceptions, the Sox cannot maintain their claims under a conflict of interest theory.

■ The White Sox' final contention is that, as a consequence of its bad-faith actions and its failure to defend, Pekin is liable for all defense costs incurred and for the full amount of any judgment or settlement resulting from the Vilet litigation. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Smiley v. Manchester Insurance & Indemnity Co.* (1973), 13 Ill. App. 3d 809, 812, 301 N.E.2d 19.) This contention, however, depends upon a finding of bad faith or a failure to defend on Pekin's part. Since neither of these elements have been proved, their consequences are of no interest here. Thus, the Sox' final contention has no merit.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

LORENZ and PINCHAM, JJ., concur.