ANGLO–AMERICAN INSURANCE COMPANY and Richard Lawrence, an Underwriter at Lloyds' London, on behalf of himself and all those other Lloyds Underwriters subscribing to Policy No. 595/LEO 09501, Plaintiffs,

v.

Emil J. MOLIN, Theodore D. Nering, Frederic S. Richardson, Bernard D. Richardson, Mark A. Alexander, Joseph S. Breakey, Thomas Matayjasik, James Oas, Harry M. Stokes, Steven C. Whetsone, Aaron Yakov–Nagar, David Smith, Barry S. Feldman, Leon A. Larosa, and Charles N. Coatesworth, Insurance Commissioner of Pennsylvania, Defendants.

Commonwealth Court of Pennsylvania.

Heard Oct. 18, 1995.

Decided Nov. 6, 1995.

Publication Ordered Dec. 28, 1995.

hearing also related to other charges to which Wright pled guilty. Wright then filed a motion to modify the sentence, which was denied on April 14, 1995.

The determination of guilt, however, occurred on August 13, 1992. Wright's appeal is therefore limited to those issues raised in his post-trial motions, pursuant to former Pa.R.Crim.P. 1123(c)(3) (rescinded March 22, 1993, effective as to cases in which the determination of guilt occurs on or after January 1, 1994).

Christopher Graham and James J. Binns, for plaintiffs.

Eugene J. Maginnis Jr., for defendant Joseph S. Breakey.

Zachary Grayson and Bernard Chanin, Special Counsels, for defendant, Bernard Chanin.

David L. Jacobson, for defendant Barry S. Feldman.

PELLEGRINI, Judge.

Presently before this Court is a motion for preliminary injunctive relief filed by Frederic S. Richardson, Emil J. Molin and Theodore D. Nering (Richardson Defendants) in an interpleader action commenced by Anglo–American Insurance Company and Richard Lawrence, an Underwriter at Lloyds' London on behalf of himself and all other Lloyds

Underwriters subscribing to Policy No. 595/LEO 09650I (Underwriters).

On January 29, 1993, the Underwriters issued a Directors' and Officers' Liability and Company Reimbursement Policy (Policy) to American Homestead, Inc., the parent corporation of Corporate Life Insurance Company (Corporate Life). The Policy, which provided coverage for the period between the date of issuance and December 31, 1993, contained an aggregate limit of liability of $1.5 million and was subsequently renewed, fully-funded, in 1994. The Richardson Defendants, as well as the other officers and directors of Corporate Life, were named as the insureds.

In the Insuring Clause of the Policy, the Underwriters agreed to:

> pay on behalf of the Directors and Officers Loss resulting from any Claim first made during the Policy Period or the Optional Extension Period, if applicable, against any of them for a Wrongful Act, where the Company had not indemnified them for such Loss.

The Policy proceeds to define "Loss" as "damages, settlements and Costs, Charges and Expenses," specifying "Costs, Charges and Expenses" as being "reasonable and necessary legal fees and expenses incurred by the Directors and Officers in defense of any Claim and appeals therefrom." The notice set forth in the Declarations of the Policy provides that "THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY AMOUNTS INCURRED AS COSTS, CHARGES AND EXPENSES.... THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND THOSE INSURED UNDER THE POLICY." The Policy also specifically sets forth its aggregate limit of liability as $1.5 million "for all Loss under this Policy, regardless of the number of Claims made against the Directors and Officers." In the Policy's Warranty Clause, the officers and directors and the Underwriters agreed that the Policy was "a single contract and not a severable contract of insurance or a series of individual contracts of insurance."

Simultaneous with the execution of the Policy, the Underwriters also issued an agreement for the payment of interim legal fees and expenses and an addendum thereto (funding agreement). In the funding agreement, the Underwriters agreed to reimburse the insureds for reasonable and necessary legal fees and expenses incurred on their behalf by their counsel in defending numerous law suits brought against the former officers and directors of Corporate Life, with the total of these reimbursements not to exceed the $1.5 million coverage under the Policy from which they were made. The funding agreement further provided that any party thereto may cancel it upon thirty days written notice.

On June 30, 1995, the Underwriters informed the Richardson Defendants that they were seeking to interplead the proceeds from the Policy with this Court and intended to no longer fund their defense in the numerous cases that were pending against them. Citing to a $1 million settlement offer made by the Statutory Liquidator to Barry Feldman, another insured under the Policy, the Underwriters explained that they did not know how to respond to the offer because it would exhaust the coverage under the Policy. Following the Underwriters' filing of their complaint in interpleader, the Richardson Defendants filed the present motion for preliminary injunctive relief, requesting that the Underwriters be enjoined from ceasing to reimburse the costs they have incurred and will incur in defending claims covered by the Policy.[1]

A preliminary injunction may be granted only where the moving party establishes the following elements: (1) the relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) greater injury will occur from denying the injunction than from granting it; (3) the injunction will restore the parties to the status quo as it existed prior to the alleged wrongful conduct; (4) the alleged wrongful conduct is manifest; and (5) the moving party's right to relief is clear. *Lewis*

---

1. The Richardson Defendants had originally filed a complaint in the United States District Court for the Eastern District of Pennsylvania. Upon the motion of the Statutory Liquidator, the District Court abstained from retaining jurisdiction over the matter.

*v. City of Harrisburg*, 158 Pa.Cmwlth. 318, 631 A.2d 807 (1993). Being an extraordinary remedy, a preliminary injunction should not issue if the moving party's right thereto is not clear or if the conduct sought to be enjoined is not manifestly wrong. *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768 (1965); *Schaeffer v. Frey*, 403 Pa.Superior Ct. 560, 589 A.2d 752 (1991). Moreover, a preliminary injunction should not be granted if it will result in greater harm than that which would occur if it were denied. *Independent State Store Union v. Pennsylvania Liquor Control Board*, 495 Pa. 145, 432 A.2d 1375 (1981).

The Richardson Defendants contend that, pursuant to the terms of the Policy, the Underwriters have a duty to fund their defense in actions brought against them and arising out of their conduct as the officers and directors of Corporate Life. The Richardson Defendants also contend that, because the warranty clause of the Policy renders the coverage non-severable, the Underwriters are precluded from settling any claim as to less than all of the insureds without obtaining a global settlement or a release of all of the insureds. In further support of this contention, the Richardson Defendants argue that common law precludes the Underwriters from disbursing the proceeds of an insurance policy for the benefit of less than all of the insureds. If the Underwriters were to fund the various proposed settlements pending before it, the Richardson Defendants contend that the Policy would be depleted and that they would have no way to defend the claims asserted against them. This result, the Richardson Defendants argue, is not for the benefit of all the insureds.

On the other hand, the Statutory Liquidator argues that, if this Court were to grant the preliminary injunction and allow the Richardson Defendants to fund their defense

via the proceeds from the Policy, there would be little or no funds remaining for those making claims under the Policy, including Barry Feldman and others who have claims under the Policy.[2] Not only would such a result circumvent the purpose behind the underlying interpleader action, the Statutory Liquidator argues, it would not be for the benefit of all of the insureds, a principle relied upon by the Richardson Defendants in their opposition to the proposed settlement agreements.

We begin by observing several fundamental principles of law that are relevant to the Richardson Defendants' motion for a preliminary injunction.[3] First, an insurer has a duty to act in good faith with respect to the disbursement of the proceeds of an insurance policy. *Dercoli v. Pennsylvania National Mutual Insurance Co.*, 520 Pa. 471, 554 A.2d 906 (1989). This is a contractual duty arising out of the fiduciary relationship created between the insurer and the insured. *Gilderman v. State Farm Insurance Co.*, 437 Pa.Superior Ct. 217, 649 A.2d 941 (1994). Because of this duty, an insurance company cannot hastily enter into a settlement for the purpose of exhausting the limit of its liability and avoiding its obligation to fund the defense of the named insureds. *Maguire v. Ohio Casualty Insurance Co.*, 412 Pa.Superior Ct. 59, 602 A.2d 893, *petition for allowance of appeal denied*, 532 Pa. 656, 615 A.2d 1312 (1992).

At the same time, however, the insurer's duty to act in good faith does not require it to disregard its interests in order to make those of the insured paramount. *Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 134 A.2d 223 (1957). In this regard, the insurer may reject a settlement offer and insist on litigation if it has a bona fide belief that it has a good possibility of succeeding on

---

2. According to the allegations in the complaint in interpleader, $159,529.36 have already been paid by the Underwriters to fund the defense of the officers and directors in two actions commenced against them by the Statutory Liquidator. The pleadings have yet to be closed in either of those actions.

3. Although the holding of this Opinion is premised upon applicable principles of insurance law, this is not to be construed as being a finding by this Court that the Policy is, in fact, insurance. Given the allegations of the Statutory Liquidator that the Policy is not insurance, but instead, constitutes a fraudulent transfer, the determination of whether the Policy constitutes insurance must be made at a subsequent time.

the merits. *Id.* In so doing, the insurer runs the risk of a subsequent determination that its refusal of a settlement offer was unreasonable. In which case, it would be liable for the entire amount of the judgment entered against the insured, regardless of whether it exceeds the policy limits. *Gedeon v. State Farm Mutual Auto Insurance Co.,* 410 Pa. 55, 188 A.2d 320 (1963). The consequences of losing on an action for which the insurer has rejected a reasonable settlement offer creates an obligation on its part to seriously entertain and accept such offers and avoid litigation.

In support of their motion for a preliminary injunction, the Richardson Defendants assert that the Underwriters' duty to act in good faith creates their right to be reimbursed for their defense costs. The Underwriters filed their complaint in interpleader precisely because of their obligation to accept reasonable settlement offers and its conflict with their duty to act in good faith towards the non-settling insureds. The issue presently before this Court, therefore, is whether an insurance company may exhaust an insurance policy by disbursing the proceeds therefrom to some of the named insureds, while leaving no proceeds for the remaining insureds. If it may do so, then the Richardson Defendants do not have a clear right to the Policy's proceeds.

While there is no Pennsylvania case law directly addressing this issue, other jurisdictions have resolved the conflicting duties imposed upon an insurer that arise when that insurer is faced with a settlement offer dealing with less than all of the insureds under a policy. *See Underwriters Guarantee Insurance Co. v. Nationwide Mutual Fire Insurance Co.,* 578 So.2d 34 (1991); *Pekin Insurance Co. v. Home Insurance Co.,* 134 Ill. App.3d 31, 89 Ill.Dec. 72, 479 N.E.2d 1078 (1985); *Bohn v. Sentry Insurance Co.,* 681 F.Supp. 357 (E.D.La.1988), *affirmed,* 868

F.2d 1269 (5th Cir.1989); *Matter of Vitek, Inc.,* 51 F.3d 530 (5th Cir.1995).

In *Pekin Insurance Co.,* the Appellate Court of Illinois observed that, because the non-settling insured would receive the benefit of the settlement as a set-off against the damage award in the underlying suit, the insurer did not act in bad faith in securing a settlement for policy limits on behalf of one insured without notifying or obtaining a discharge from liability for the other insured. *Pekin Insurance Co., supra.*

Similarly, the United States Court of Appeals for the Fifth Circuit specifically rejected the blanket proposition that an insurance company cannot prefer one of its insured over another. *Matter of Vitek, Inc.,* 51 F.3d 530 (5th Cir.1995). Finding that there is no law to support the principle that an insurer is forbidden from settling with one of its co-insureds to the disadvantage of another one, the Fifth Circuit stated that any wrongdoing on the part of the insurer could be remedied via a cause of action for breach of good faith filed by the non-settling insured.[4] The Fifth Circuit expressly declined to convert such a cause of action to a general prohibition against insurers. *Id.*

Moreover, both the United States District Court for the Eastern District of Louisiana and the Court of Appeal of Florida have held that, absent an allegation of bad faith with respect to settlement negotiations, an insurer will not be precluded from entering into a settlement agreement releasing less than all of the insureds. *Bohn v. Sentry Insurance Co.,* 681 F.Supp. 357 (E.D.La.1988), *affirmed,* 868 F.2d 1269 (5th Cir.1989); *Underwriters Guarantee Insurance Co. v. Nationwide Mutual Fire Insurance Co.,* 578 So.2d 34 (1991). So long as the insurer has not acted in bad faith, those cases have held, the insurer will be relieved of all obligations to defend or fund the defense of the non-settling insureds. *Id.*

---

**4.** The Richardson Defendants cite to *Smoral v. Hanover Insurance Co.,* 37 A.D.2d 23, 322 N.Y.S.2d 12 (1971), in arguing that the Underwriters cannot settle for less than all of the officers and directors. In *Smoral,* the Supreme Court of New York, Appellate Division, specifically found that the insurer had acted in bad faith, and therefore, had breached its duty to Smoral. That case dealt with a cause of action against the insurer for breach of contract and did not establish a complete prohibition on all partial settlements by insurers. *See Matter of Vitek, Inc.,* 51 F.3d 530, 536–37 (5th Cir.1995).

 In light of those holdings, and given the dilemma faced by an insurer when faced with a reasonable settlement offer for less than all of the insureds, we conclude that the insurer should not be precluded from accepting that offer.[5] By accepting an offer, the insurer will avoid being subjected to a liability exceeding the policy limits due to its rejection of a reasonable offer, and the settlement, as in this case, will benefit all of the insureds. If we were to authorize the release of the funds for the defenses of the Richardson Defendants, it would only benefit those particular insureds. On the other hand, the settlement, although not releasing all of the insureds, will decrease the total amount of liability in the underlying civil action, and thus, will benefit all of the insureds.[6]

Here, because there are no allegations that the Underwriters have acted in bad faith with respect to releasing the proceeds of the Policy, and because there has yet to be any evidence establishing that the proposed settlements are unreasonable, we cannot say at this time that the Underwriters are clearly precluded from entering into those settlements.[7] Because the settlements may exhaust the limit of liability under the Policy and yet may be proper, the Richardson Defendants have failed to establish a clear right to the proceeds.[8]

 In further support of denying the Richardson Defendants' motion, we observe that, for all practical intents and purposes, none of the proceeds are currently being disbursed by the Underwriters pending the disposition of their interpleader action. To grant the Richardson Defendants' prelimi-

nary injunction would result in the use of the proceeds, thus significantly decreasing the available funds. Such an event would inflict greater harm upon the other claimants under the Policy than would occur if the proceeds were to remain with the Underwriters until their interpleader action is resolved.

Accordingly, the Richardson Defendants' motion for a preliminary injunction must be denied.[9]

### ORDER

AND NOW, this 6th day of November, 1995, upon consideration of the Motion for Preliminary Injunctive Relief of Defendants Richardson, Molin, and Nering, it is ordered that said motion is denied.

5. We caution that, in order for the insurer to accept the settlement offers, they must be reasonable. If they are not, then the insurer may nevertheless be subject to a breach of good faith action commenced by the non-settling insureds.

6. At least one commentator, after describing the position of the insurer in situations such as that occurring in the present case, has reached a similar conclusion, stating that an insurer can settle as to some insureds without subjecting itself to liability to the non-settled insureds in a bad faith suit. Schwab & Kerby, *On Partial Settlements, Directors' and Officers' Liability Insurance 1990*, PLI, at 446–47. If an insurer cannot obtain a global settlement, then it may

arrange a less comprehensive settlement and will be subject to a bad faith suit only if the process used in reaching the settlement was in bad faith. *Id.*

7. This is not to be construed as being Court approval of the proposed settlements.

8. Any defense costs incurred until the liability limitations of the Policy have been reached constitute a claim against the Policy.

9. Given our disposition of the Richardson Defendants' motion for a preliminary injunction, we need not address the other issues raised in their motion.