MILLERS MUTUAL INSURANCE ASSO-
CIATION OF ILLINOIS, Plaintiff/Coun-
terclaim Defendant–Respondent,

v.

SHELL OIL COMPANY,
Defendant/Counterclaim
Plaintiff–Appellant.

No. 71698.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 25, 1997.

Motion for Transfer to Supreme
Court Denied Jan. 15, 1998.

Application for Transfer Denied
Feb. 24, 1998.

John S. Sandberg, Jennifer L. Hardester, Sanberg, Phoenix & von Gontard, St. Louis, for appellant.

Gary P. Paul, Brinker & Doyen, St. Louis, for respondent.

AHRENS, Presiding Judge

In this declaratory judgment action, defendant/appellant Shell Oil Company ("Shell") appeals from a judgment which determined that Millers Mutual Insurance Association of Illinois ("Millers") had no obligation to defend or indemnify Shell or the named insured, H.T. Dunn Oil Company, Inc. ("Dunn") in a tort action in which Miller paid its liability policy limits to the tort claimants and settled as to Dunn. We affirm.

Shell leased land, on which a gas station sits, to Dunn. In addition to the lease, Dunn and Shell entered into a dealer agreement, containing detailed provisions regarding the operation of the station. As lessee, Dunn agreed to maintain at all times and at Dunn's expense, insurance satisfactory to Shell of certain minimum types and limits. Millers issued an insurance policy to Dunn, naming Shell as an additional insured and providing Shell all the benefits of coverage afforded to Dunn.

■ The policy contained a liability limit of $500,000 for "other than 'auto' only" claims under the liability coverage section. The liability coverage section provides in part as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."

> We have the right and duty to defend any "suit" asking for these damages. However, we have no duty to defend "suits" for "bodily injury" or "property damage" not covered by this Coverage Form. We may investigate and settle any claim or "suit" as we consider appropriate. *Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance— "Garage Operations"—Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.*[1]

(emphasis added).

In the definition section, the policy defined an "insured" as "any person or organization qualifying as an insured in the Who Is Insured provision of the applicable coverage." The policy then contained the following severability clause: "Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought."

In June, 1993, the underlying plaintiffs, J.M. and D.M., filed suit against Dunn and Shell based on negligence. Specifically,

---

1. We will refer to the italicized clause as a "coverage clause." Shell seeks to characterize this critical sentence as an "exclusionary clause." We disagree with Shell's characterization. "Exclusions are policy provisions stating that certain causes of loss, or certain consequences of an insured event, are not covered by the policy." *Heredia v. Farmers Ins. Exchange*, 228 Cal. App.3d 1345, 279 Cal.Rptr. 511, 518 (1991). This critical sentence in the coverage section simply establishes the order and priority of available coverage. *Id.*

Plaintiff J.M. alleged she was abducted at gunpoint from Dunn's premises, raped and shot in the head. Both Dunn and Shell tendered the defense of the underlying case to Millers. Millers agreed to defend both Dunn and Shell in accordance with the provisions in the insurance policy issued by Millers. Millers defended Dunn and Shell and paid all defense costs incurred by Shell from June, 1993 until March 14, 1995.

In January, 1995, the underlying plaintiffs and Dunn entered into settlement negotiations. On January 11, 1995, the underlying plaintiffs made demand upon Millers to settle the underlying suit only as to Dunn for Millers' policy limit of $500,000. The underlying plaintiffs refused to consider any settlement negotiations involving Shell. The underlying plaintiffs, as well as Dunn, threatened to take action against Millers under the "bad faith" doctrine should Millers refuse to compromise their claims against Dunn.

In January, 1995, Millers notified Shell of the underlying plaintiffs' demand and their refusal to consider any settlement on behalf of Shell. Shell objected to any cessation of Millers' duty to defend should a settlement be reached solely on behalf of Dunn. In February of 1995, Dunn made demand upon Millers to settle the underlying suit for Millers' policy limit. Millers again conveyed an offer of settlement to the underlying plaintiffs in exchange for a full and final release as to both Dunn and Shell. The underlying plaintiffs continued to reject any settlement and release on behalf of Shell.

On or about February 16, 1995, Millers settled the underlying suit and any other claims as to Dunn for the policy limit of $500,000.00. Millers and Shell stipulated that this settlement was reasonable under the circumstances. The settlement related only to Dunn, and not to Shell, the additional insured.

In March, 1995, Millers terminated its defense of Shell in the underlying suit. After terminating all funding of Shell's defense on the underlying case, Millers filed a declaratory judgment action seeking a declaration that its duty to defend Shell as an additional insured on the policy ceased with its settlement solely on behalf of Dunn. Shell filed a

counterclaim, asking the trial court to declare Millers had an obligation to continue to defend Shell in the underlying suit.

The trial court entered judgment in favor of plaintiff Millers on its declaratory judgment action, and found in favor of Millers on Shell's counterclaim.

Shell raises two issues on appeal. In its first point, Shell argues the policy of insurance referencing Millers' duty to defend contains a latent ambiguity when applied to situations involving multiple insureds or multiple claims and must therefore be construed to afford coverage to Shell. In its second point, Shell argues Millers did not satisfy its duty to defend Shell when it paid its policy limits on behalf of another insured.

## STANDARD OF REVIEW

The parties dispute the applicable standard of review. Shell contends Rule 55.27(b) mandates a motion for judgment on the pleadings shall be treated as one for summary judgment and disposed of as provided in Rule 74.04. Therefore, the applicable standard of review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Millers disagrees, arguing the proper standard of review is that to be applied in a declaratory judgment action when there is a stipulated record. Millers contends the appellate court is to sustain the decree or judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Eaton v. State Farm Mut. Auto. Ins. Co.*, 849 S.W.2d 189, 191 (Mo.App. 1993) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and *Abco Tank and Mfg. Co. v. Federal Ins. Co.*, 550 S.W.2d 193, 197 (Mo. banc 1977)).

Here we are dealing with a matter of law, requiring *de novo* review. The interpretation of the meaning of an insurance policy is a question of law. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo.App. 1988). "No deference is due the trial court's

judgment where resolution of the controversy is a question of law." *MFA Mut. Ins. Co. v. Home Mut. Ins. Co.*, 629 S.W.2d 447, 450 (Mo.App.1981).

## POINTS ON APPEAL

Shell first argues the policy of insurance referencing Millers' duty to defend contains a latent ambiguity when applied to situations involving multiple insureds or multiple claims and must therefore be construed to afford coverage to Shell. We disagree.

Shell contends the language in the coverage clause fails to define the parameters of any payment for judgment or settlement when the policy provides coverage for more than one insured or in a situation where one insured is sued on multiple claims. Shell relies on the rule that any ambiguity or uncertainty regarding coverage in an insurance policy must be resolved in favor of the insured. *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810, 811 (Mo. banc 1985).

We find no patent or latent ambiguity. *General Am. Life Ins. v. Barrett*, 847 S.W.2d 125, 131 (Mo.App.1993). There is no duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). The language in the policy is not reasonably open to different constructions. *Id.*

■■■ Shell argues the *coverage clause* does not state whether payment of coverage limits for judgments or settlements on behalf of one insured ends the insurer's duty to defend or settle on behalf of additional insureds. The function of the court is to interpret and enforce an insurance policy as written; not to rewrite the contract. *Krombach v. Mayflower Ins. Co., Ltd.*, 785 S.W.2d 728, 731 (Mo.App.1990). In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives and intent of the parties. *Id.*

■■ Based on the rules of construction, Millers' duty to defend ended when it settled the claim for the policy limits as to the named insured, Dunn. The policy clearly stated the duty to defend ended when the applicable liability limits of coverage had been exhausted by payment of judgments or settlements. The parties agreed the payment of the liability limit on behalf of Dunn exhausted the liability limits. A literal reading of the policy language mandates that Millers duty to settle or defend ends when the applicable liability coverage limit of insurance is exhausted by payment of settlements. When Millers settled on behalf of Dunn, it exhausted the applicable policy limit of $500,000. Upon exhaustion, it had no duty to defend Dunn or Shell, an additional insured. The policy has one limit of liability and when it is exhausted by payments of judgment or settlement, the duty to defend or settle ends.

Shell cites several cases as authority for its contention that the *coverage clause* is ambiguous.[2] None of these cases present facts or policy language similar to the case at bar. Each involves a situation where an insurance company attempted to pay its policy limits into court to avoid defense costs or to a claimant without settlement on behalf of any insured or a release of any insured. The cited cases do not turn on the ambiguity of similar policy language.

Other courts have found similar language in insurance contracts to be unambiguous and enforceable when settlement is made as to the named insured. *E.g., American States Ins. Co. v. Arnold*, 930 S.W.2d 196, 201 n. 1 (Tex.App.1996) (cases collected therein). In *Johnson v. Continental Ins. Companies*, 202 Cal.App.3d 477, 248 Cal.Rptr. 412 (1988), the court found similar policy language, which terminated the duty to defend when the limits of the policy had been reached, unambiguous and clearly presented. The insurer paid out its full primary liability coverage limits to settle claims of four claimants, effectively ending its duty to defend. A Wisconsin Court of Appeals and the Louisiana Supreme

---

**2.** *Emcasco Ins. Co. v. Davis*, 753 F.Supp. 1458 (W.D.Ark.1990); *Samply v. Integrity Ins. Co.*, 476 So.2d 79 (Ala.1985); *Conway v. Country Casualty Ins. Co.*, 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245 (1982); and *Aetna Casualty & Surety Co. v. Sullivan*, 33 Mass.App.Ct. 154, 597 N.E.2d 62 (1992).

Court came to similar decisions regarding similar clauses in *Novak v. American Family Ins. Co.*, 183 Wis.2d 133, 515 N.W.2d 504 (1994) and *Pareti v. Sentry Indem. Co.*, 536 So.2d 417 (La.1988).

In *Country Mut. Ins. Co. v. Anderson*, 257 Ill.App.3d 73, 195 Ill.Dec. 35, 37, 628 N.E.2d 499, 501 (1993), a policy contained a provision stating the insurer's payment of the liability limit would operate to terminate its duty to defend or settle. The insurer settled a claim as to the named insured for the policy limits. However, the insured did not obtain a release for the additional insured. The additional insured contended the insurer owed a continuing duty to defend. The court rejected the argument believing the language of the policy "unambiguously manifested the parties' intention to limit the duty to defend to the time before policy limits were properly exhausted ..." *Id.*, 195 Ill Dec at 40, 628 N.E.2d at 504; *See also, Zurich Ins. Co. v. Raymark Industries*, 118 Ill.2d 23, 112 Ill. Dec. 684, 699, 514 N.E.2d 150, 165 (1987) (the court held similar language clearly and explicitly manifested the parties' intention to limit the insurer's obligation to defend all actions to the period of time prior to the time when its obligation to indemnify is discharged by payment of judgments or settlement).

■ Shell also argues the ambiguity in the wording of the coverage clause is further complicated by the policy's definition of the term "insured" in the *severability clause.* Shell correctly identifies the rule stating an ambiguous phrase must not be considered in isolation, but "by reading the policy as a whole with reference to the associated words." *Chase Resorts, Inc. v. Safety Mut. Casualty Corp.*, 869 S.W.2d 145, 150 (Mo. App.1993).

Shell argues the *severability clause* contradicts Millers' explanation of the coverage clause in issue. Shell contends the *severability clause* mandates coverage should be applied separately to each insured, with only one exception—the limit of insurance. Therefore, the "duty to defend" coverage applies separately to each insured regardless of the payment of policy limits.

Shell's argument fails. *Chase Resorts* instructs us to look at the entire policy to consider the meaning of an ambiguous phrase. We determined the *coverage clause* in question is unambiguous. It is, however, possible for the *severability clause* to create ambiguity when viewed in combination with an otherwise unambiguous clause in another part of the policy. *See American Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531 (Mo. App.1995). Reading the two phrases together creates no ambiguity. The duty to defend can apply simultaneously to all insureds and thus, separately as stated in the *severability clause.* The indemnity limits on the other hand, cannot be paid out simultaneously on behalf of all insureds. The indemnity limits are finite and when exhausted by settlements or judgments all duties to defend end, as stated in the *coverage clause* at issue. Shell's coverage should have ended when Dunn's coverage ended. *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C.Cir.1996) (additional insured has same rights to a defense and indemnity as the named insured, but no more). After Millers' payment of the policy limits, it had no duty to defend Dunn and likewise had no duty to indemnify or defend Shell, an additional insured.

Shell further argues an inherent ambiguity in the *coverage clause* exists and could be clarified by adding "whether on the sole behalf of any one insured covered by the policy or on behalf of any one claim covered under the policy" in the *coverage clause* after the word "exhausted" and before the phrase "by judgments or settlements." Shell turns to *Moore*, 912 S.W.2d at 534 and *American Family Mut. Ins. Co. v. Copeland–Williams*, 941 S.W.2d 625 (Mo.Ct.App.1997) for support. Both *Moore* and *Copeland–Williams* held the inclusion of the words "any insured" in the policy's *exclusionary clause* unambiguously expressed an intent to deny coverage to anyone defined as an insured, despite language in the *severability clause* stating the liability coverage "applies separately to each insured." Shell contends that in the instant case, the *coverage clause* makes no reference to "any insured" and therefore, becomes ambiguous by negative inference.

In the instant case, the addition of the proposed phrase or the inclusion of the word "any" would not have shed additional light on an already unambiguous clause. We cannot say these additions would create ambiguity. They do, however, create unnecessary redundancy. Both *Moore* and *Copeland–Williams* address the issue of whether a *severability clause* can render an *exclusionary clause* ambiguous. The *Moore* Court relied on *Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810, 812 (Mo. banc 1985) in deciding the "any insured" phrase unambiguously manifested the parties' intent that the exclusion applied to all insureds under the policy, regardless of the *severability clause*. Had the drafter used "the insured" instead, the phrase could have two different meanings and should therefore, be construed against the drafter. *Id.* The coverage clause in issue in the instant case does not use the term "insured." We cannot conclude that because the inclusion of the phrase "any insured" rendered an *exclusionary clause* unambiguous, the lack of the phrase "any insured" in a *coverage clause* has the opposite effect. Therefore, we find *Moore* and *Copeland–Williams* inapposite.

Insofar as a contract may be open to different constructions, we will adopt the interpretation most favorable to the insured. *Dieckman v. Moran*, 414 S.W.2d 320, 321 (Mo.1967). This rule does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity when none exists. *Id.* The rules of construction are inapplicable when an insurance policy is unambiguous. *Krombach*, 827 S.W.2d at 210. Courts will not create an ambiguity in order to distort the language of an unambiguous insurance policy. *Id.* The policy must be enforced as written. Point one is denied.

In its second point on appeal, Shell contends Millers did not satisfy its duty to defend Shell, an additional insured, when it paid its policy limits on behalf of the named insured, Dunn. Shell recognizes any indemnification of Dunn under the policy for settlement purposes is a setoff against any judgment rendered against Shell. However, Shell believes there is no basis in law for Millers' termination of its duty to defend Shell after settling on behalf of another insured under the policy in issue. The issue of whether an insurer may terminate its duty to defend one insured on a policy when it paid a settlement exhausting policy limits on the sole behalf of another insured is one of first impression in Missouri.

Shell correctly asserts there are two duties addressed in the insurance policy at issue: the duty to defend and the duty to indemnify. An insurer's duty to defend is broader than its duty to indemnify. *Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.*, 740 F.2d 647, 652 (8ᵗʰ Cir.1984). This means an insurer has a duty to defend an insured if the allegations of the plaintiff's complaint state a claim which is potentially or arguably within the policy's coverage. *Id.* The duty to defend is contractual. *Bonner v. Auto. Club Inter–Insurance Exch.*, 899 S.W.2d 925, 928 (Mo.App.1995). All provisions of an insurance policy must be given effect and the policy must be construed in light of the specific situation with which the parties are dealing. *Chase Resorts*, 869 S.W.2d at 150.

Shell contends there must be a *complete* settlement or judgment in the underlying action to terminate the duty to defend. *Emcasco*, 753 F.Supp. at 1462; *Samply*, 476 So.2d at 83. Absent a complete settlement or judgment, the protection of a full defense afforded by the policy would be rendered "a near nullity." *Id.* In the instant case, Millers entered a complete settlement on behalf of Dunn. Moreover, this settlement will act as a setoff in an action against Shell. Settlement on behalf of one insured did not render the policy a near nullity.

Shell notes that various courts have recognized the insurer's obligation of fairness to all its insureds when tendering the policy limits on behalf of only one insured. *See Smoral v. Hanover Ins. Co.*, 37 A.D.2d 23, 322 N.Y.S.2d 12, 14 (N.Y.App.Div.1971); *Countryman v. Seymour R–II Sch. Dist.*, 823 S.W.2d 515, 522 (Mo.App.1992); and *Shell Oil Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 44 Cal.App.4th 1633, 52 Cal.Rptr.2d 580, 586–90 (1996). We do not find these cases supportive of Shell's argument. Mil-

lers acted fairly in attempting to defend and indemnify both Dunn and Shell.

*Smoral* involved a matter in which the insurer acted in bad faith. Subsequent decisions have indicated *Smoral* dealt with an action against an insurer for breach of contract and did not establish complete prohibition on all partial settlements by insurers. *Matter of Vitek*, 51 F.3d 530, 536–37 (5th Cir.1995); *Pekin Ins. Co. v. Home Ins. Co.*, 134 Ill.App.3d 31, 89 Ill.Dec. 72, 75, 479 N.E.2d 1078, 1081 (1985); *Anglo–American Ins. Co. v. Molin*, 670 A.2d 194, 198 (Pa. Commw.1995). There is no evidence that Millers acted in bad faith. Shell concedes that Millers entered a reasonable settlement agreement on behalf of Dunn.

The *Countryman* decision addressed the issue of the proper allocation of insurance proceeds among multiple insureds after a judgment had been entered against the insureds. The case had nothing to do with the duty to defend. Shell does not contest the allocation of the insurance proceeds on behalf of Dunn. Whether Millers allocated those limits by payment for Dunn, Shell, or both, is irrelevant. Millers exhausted the limits by settlement and thus terminated its duty to defend.

The *Shell Oil* decision is analogous to the instant case, with one exception. In *Shell Oil*, Donald Vaughn suffered severe injuries while performing work at Shell's refinery. Vaughn brought suit against his employer and Shell for negligence. Both defendants submitted a demand for defense to National, the insurer. National declined to cover Shell and paid the employer's share of a settlement. Shell pursued claims for coverage and defense against National. The trial court ruled in Shell's favor. The appellate court affirmed, noting Shell received no statutory credit from the employer's settlement because the settlement was simultaneous with and dependent upon Shell's own settlement with Vaughn. Based upon the lack of setoff, the court held a continuing duty to defend existed. *Id., 52 Cal.Rptr.2d* at 588. There is no question in the instant case that a right of setoff exists as to Shell for amounts paid on behalf of Dunn as they were alleged joint tortfeasors. Sec. 537.060 RSMo.1994. Shell

argues the right of setoff affects only the indemnification issue and not the duty to defend issue. To the extent *Shell Oil* differs from our decision today, we find it is not persuasive.

Millers, faced with a difficult choice, should not be obligated to defend an additional insured after paying its limits in a reasonable settlement for the named insured. We choose to follow the approaches set out in the following cases: *Bohn v. Sentry Ins. Co.*, 681 F.Supp. 357, 365 (E.D.La.1988), *aff'd* 868 F.2d 1269 (5th Cir.1989); *Underwriters Guarantee Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 578 So.2d 34, 35 (Fla.App.1991); *Country Mut. Ins. Co. v. Anderson*, 257 Ill. App.3d 73, 195 Ill.Dec. 35, 39–40, 628 N.E.2d 499, 503–04 (1993); *Pekin Ins. Co. v. Home Ins. Co.*, 134 Ill.App.3d 31, 89 Ill.Dec. 72, 75, 479 N.E.2d 1078, 1081 (1985); and *Anglo– American Ins. Co. v. Molin*, 670 A.2d 194, 198 (Pa.Cmwlth.1995).

■ A settlement offer given to only one insured that would exhaust coverage under the liability limit of the policy creates a dilemma for the insurer. An insurer should not be precluded from accepting a reasonable settlement offer for fewer than all insureds. By accepting the offer the insurer would avoid being subjected to liability exceeding the policy limits due to its rejection of a reasonable offer. *Molin*, 670 A.2d at 199. Further, any settlement would benefit all insureds by decreasing the total amount of liability in the underlying suit. *Id.*

Illinois recognized the insurer's need to settle a claim for one insured and end its duty to defend other insureds. *Anderson*, 195 Ill.Dec. 35, 628 N.E.2d at 499. In *Anderson*, an insurer similarly filed a declaratory judgment action seeking a determination it no longer had an obligation to defend an additional insured after settling the case for the policy limits for the named insured. The policy contained unambiguous language that the insurer's payment of the liability limit would operate to terminate its duty to defend or settle. The court held the settlement did not violate the insurer's duty of good faith and fair dealing and that the settlement for the policy limits discharged

the insurer's obligation to defend the additional insured in the underlying case.

Relying on *Zurich Ins. Co. v. Raymark Industries,* 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987), the *Anderson* Court concluded that upon payment the insurer no longer had a duty to defend the additional insured, stating the language in the policies unambiguously manifested the parties' intention to limit the duty to defend to the time before policy limits were properly exhausted. *Anderson,* 195 Ill.Dec. at 40, 628 N.E.2d at 504. "There is no evidence of a breach of contract or bad faith in this case." *Id.; See also Pekin,* 89 Ill.Dec. at 75, 479 N.E.2d at 1081.

In *Underwriters Guarantee,* 578 So.2d at 34, the insurer extinguished its duty to defend by paying its limits and securing a release of its named insured, even though an action remained pending against an additional insured under the policy. The unambiguous policy provision relieved the insurer of its duty to defend once it had paid its policy limits. Therefore, after payment of its policy limits in settlement on behalf of its named insured, the insurer had no obligation by its contract to continue defending the additional insured. Similarly, the United States Court of Appeals for the Fifth Circuit specifically rejected the rule that an insurance company cannot prefer one of its insureds over another. *Matter of Vitek, Inc.,* 51 F.3d at 530. The *Vitek* Court found no law to support the principle that an insurer is forbidden from settling on behalf of one of its co-insureds to the disadvantage of another, stating any wrongdoing on the part of the insurer could be remedied via a cause of action for breach of good faith filed by the non-settling insured.

The duty to defend coverage can be broader than the indemnity coverage and still terminate on exhaustion of the liability limits. An insurer has a duty to defend claims falling within the ambit of the policy even if it may not ultimately be obligated to indemnify the insured. *Zurich Ins. Co.,* 112 Ill.Dec. at 697, 514 N.E.2d at 163. Upon exhaustion of the indemnity limits, however, the insurer *cannot* ultimately be obligated to indemnify the insured. *Id.* "Thus, the duty to defend is broader than the duty to indemnify only when the insurer had the potential obligation to indemnify." *Id.* Based on the unambiguous policy, when the insurer has no potential obligation to indemnify it has no duty to defend. *Id.*

Absent public policy to the contrary, an insurance policy must be enforced as written. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo. banc 1992). We find no persuasive authority supporting the proposition that an unambiguous policy provision stating the insurer's duty to defend will terminate upon payment of policy limits should be disregarded or voided for reasons of public policy.[3]

These parties contracted for this insurance policy. The clause in question is unambiguous. Millers settled the claim in good faith, attempting to obtain a full release on behalf of Shell. The policy clearly allows for the termination of the duty to defend upon exhaustion of payments. Had Shell desired additional language providing for a continuing duty to defend upon settlement for the policy limits on behalf of one insured, it could have required Dunn to obtain a different policy.

 A policy may specifically provide for termination of a duty to defend upon payment of the policy limits, but public policy requires the insurer to act in good faith in the interest of all insureds under the policy. Millers acted in good faith in strictly complying with the unambiguous language of the policy issued. This is not a case in which the insurer attempted to tender the limits into court for the purpose of totally avoiding its duty to defend. Millers attempted to obtain a settlement on behalf of Shell and upon the plaintiffs' refusal, it made a reasonable settlement on behalf of the named insured for the

---

**3.** The following cases, interpreting such policy language, do not support the position that such language should be void for reasons of public policy: *American States Ins. Co. v. Arnold,* 930 S.W.2d 196 (Tex.App.1996); *Country Mut. Ins.* *Co. v. Anderson,* 257 Ill.App.3d 73, 195 Ill.Dec. 35, 628 N.E.2d 499 (1993); *Novak v. American Family Mut. Ins. Co.,* 183 Wis.2d 133, 515 N.W.2d 504 (1994); and *Pareti v. Sentry Indem. Co.,* 536 So.2d 417, 423 (La.1988).

policy limits. The unambiguous policy language allows Millers to terminate its duty to defend upon exhaustion. We hold an insurer relying on unambiguous policy language may terminate its duty to defend an additional insured when the policy limits are exhausted in a good faith settlement on behalf of the named insured.

The judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.