COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. GREG W. ANDERSON *et al.*, Defendants and Cross-Defendants and Counterdefendants (Pekin Insurance Company, Defendant and Cross-Plaintiff and Counterplaintiff and Counterdefendant-Appellee; Elmhurst-Chicago Stone Company *et al.*, Defendants and Cross-Defendants and Counterdefendants and Counterplaintiffs-Appellants).

First District (4th Division)   Nos. 1—91—3070, 1—91—3148 cons.

Opinion filed November 24, 1993.—Rehearing denied January 4, 1994.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (Donald G. Peterson, of counsel), for appellants.

John J. Foley & Associates, of Chicago (John J. Foley, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

In declaratory judgment actions, Country Mutual Insurance and Pekin Insurance sought determinations that they had no obligation to defend or indemnify Greg Anderson, G. Lawrence Trucking (Lawrence), and Elmhurst-Chicago Stone (Elmhurst), in an underlying personal injury suit, because they had already paid the plaintiff the limits of their insurance policies. Elmhurst and another of its alleged insurers, Employers Insurance of Wausau (Wausau), filed an affirmative defense and counterclaim for declaratory relief, and following cross-motions for summary judgment, the trial court granted summary judgment for Country Mutual and Pekin. Elmhurst and Wausau now appeal this ruling, raising as issues (1) whether an insurer's duty of good faith and fair dealing should be extended to require it to completely extinguish the liability of each insured before settling the underlying lawsuit for policy limits; and (2) whether Anderson, Lawrence, and Elmhurst are entitled to damages for Country Mutual's and Pekin's bad faith in settling the case for policy limits.

The following facts are substantially undisputed. On September 19, 1985, Katherine Shoemaker sustained catastrophic injuries when the vehicle in which she was riding collided with a truck which was owned and being driven by Anderson. At the time of the accident, the truck had been leased by Lawrence and was in the process of transporting gravel under a contract with Elmhurst.

One month later Shoemaker filed a damage suit against Anderson and Lawrence. The complaint charged that Lawrence, as lessor of the truck at the time of the collision, was vicariously liable for Anderson's alleged negligent driving. Shoemaker subsequently amended her complaint to join Elmhurst as a defendant. She alleged that Elm-

hurst, having employed Anderson to haul gravel, was similarly vicariously liable for his negligent conduct. In Elmhurst's answer to the complaint and throughout the case, Elmhurst denied that Anderson was its agent or that it was in any way liable for his conduct.

At the time of the accident, Anderson was insured under a trucker's liability policy issued by Country Mutual, with a policy limit of $250,000. Lawrence was covered under a similar policy issued by Pekin, with a limit of $300,000, plus a Pekin umbrella policy with a limit of $1 million. Elmhurst was insured by Wausau, under a liability policy with a limit of $500,000. Each of the three policies purported to cover all damages owed by the insured for bodily injury and property damage arising from a vehicular collision. Both the Country Mutual and Pekin policies contained an "omnibus clause," under which anyone liable for the named insured's conduct at the time of the accident would be covered as an additional insured, to the extent of that liability. All three insurers assumed the "right and duty" to defend any covered damage suit, and the policies further provided that the insurer "may investigate and settle any claim or suit" as it deemed appropriate. Finally, each of the three policies contained the identical provision that the insurer's payment of the liability insurance limit would operate to terminate its duty to defend or settle.

About June 1988, Shoemaker proposed a settlement arrangement under which Anderson, Lawrence, and Elmhurst would be completely released from liability on the condition that their three respective insurers pay Shoemaker the full limits of their policies. Country Mutual and Pekin stated that they would be amenable to this offer. Wausau, however, declined to accept these terms or make any counteroffer on Elmhurst's behalf.

Wausau's claims adjuster attempted to tender Elmhurst's defense to Lawrence and Pekin, maintaining that Elmhurst was an additional insured under Lawrence's policy. In correspondence rejecting the tender, counsel for Pekin reiterated a statement by Shoemaker that she would not release Elmhurst from liability unless Wausau contributed proceeds from its policy towards settlement. Pekin indicated to Wausau that it was Pekin's and Country Mutual's intention to exhaust their policy limits and proceed with settlement in the interests of their insureds.

A settlement was executed in June of 1989. Country Mutual and Pekin tendered Shoemaker the limits of their policies for a total of $1.55 million, in exchange for which Shoemaker agreed to dismiss Anderson and Lawrence with prejudice from the suit and sign a cov-

enant not to sue them for any claim or injury arising from the occurrence. Although counsel for Pekin and Lawrence requested that Elmhurst also be included in the settlement and release, Shoemaker expressly refused to release Elmhurst because neither Elmhurst nor Wausau had tendered any proceeds towards settlement. In her covenant not to sue, Shoemaker reserved the right to proceed against Elmhurst for additional damages resulting from the accident. Anderson and Lawrence were subsequently dismissed from suit by court order. The court also entered an order finding that the settlement was in good faith. Neither order was accompanied by findings pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

After the settlement was executed, Wausau attempted to tender Elmhurst's defense to Country Mutual. Wausau stated that because the complaint contained allegations that Elmhurst was liable for Anderson's conduct, Country Mutual owed Elmhurst coverage under Country Mutual's omnibus clause. Country Mutual denied the tender, asserting that it had already paid the limits of its policy in the Shoemaker settlement.

Elmhurst subsequently initiated a third-party claim against Anderson and Lawrence in the Shoemaker suit, alleging that because Elmhurst's liability to Shoemaker was premised solely upon its alleged vicarious liability for Anderson's negligence, Elmhurst was entitled to indemnity from Anderson as well as from Lawrence as Anderson's employer. Thereafter, Anderson and Lawrence entered into an "Agreement for Judgment, Assignment, [and] Covenant Not to Execute on Judgment" (hereinafter Agreement for Judgment) with Elmhurst and Wausau, which was defending Elmhurst in the Shoemaker suit. Under this agreement, Anderson and Lawrence assigned to Elmhurst and Wausau "all rights, causes of action, and claims" they possessed against Pekin or Country Mutual arising from the Shoemaker suit, "whether present, future or inchoate," and consented to the entry of an indemnity judgment for Elmhurst for any amounts Shoemaker may recover in that action. Elmhurst, in turn, agreed to execute upon the indemnity judgment against Country Mutual and Pekin rather than Anderson and Lawrence. The trial court then entered an indemnity judgment for Elmhurst against Anderson and Lawrence.

Meanwhile, Country Mutual, having retained counsel under a reservation of rights to represent Anderson in the third-party action, filed the declaratory judgment action at issue on appeal. Country Mutual's second-amended complaint sought, in relevant part, a declaration that its good-faith settlement for policy limits discharged it from any further duty to defend or indemnify either Anderson or its

potential additional insureds, Lawrence and Elmhurst, in the Shoemaker suit. Pekin filed a cross-claim for declaratory judgment seeking a similar determination. Identical answers to these complaints were filed by both Elmhurst and by Wausau, which had entered an appearance on its own behalf.

Elmhurst proceeded to trial on the Shoemaker suit represented by Wausau's assigned counsel. The jury returned a verdict against Elmhurst in an amount exceeding $4.22 million. After a setoff for the $1.55 million previously paid by Country Mutual and Pekin, Elmhurst became liable for a judgment of over $2.62 million. Elmhurst's appeal from this judgment is currently pending before this court (*Shoemaker v. Elmhurst-Chicago Stone* (1994), 273 Ill. App. 3d 916.

Wausau subsequently amended its answer and affirmative defense to Country Mutual's declaratory judgment action. Wausau asserted that Country Mutual had a duty to defend and indemnify Elmhurst as its additional insured and that this duty was "co-equal" with the duty to indemnify its named insured Anderson. Wausau alleged that Country Mutual had breached this duty by tendering its policy limits in a settlement which excluded Elmhurst. According to Wausau, standing to assert this claim derived from its right of intervention under Code of Civil Procedure section 2—408 (Ill. Rev. Stat. 1989, ch. 110, par. 2—408), and from a nonwaiver agreement in its policy.

Wausau also filed a counterclaim for declaratory relief as assignee of Anderson and Lawrence under the Agreement for Judgment. The counterclaim alleged that Country Mutual and Pekin had wrongfully left these insureds exposed to third-party liability to Elmhurst, and that the failure to secure a complete release of these insureds constituted a breach of the duty of good faith and fair dealing owed them.

Country Mutual and Pekin moved for partial summary judgment in their declaratory judgment actions, and Wausau, on behalf of itself and Elmhurst, filed a cross-motion for summary judgment as to its affirmative defense and counterclaim. Following extensive briefing and argument, the trial court granted summary judgment for Country Mutual and Pekin and denied Wausau's motion. The court determined that Country Mutual and Pekin had no further obligation to defend or indemnify Anderson, Lawrence, or Elmhurst after settling in good-faith for policy limits. The instant appeal followed.

Summary judgment is proper where the pleadings, depositions and affidavits show that there is no disputed question of fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005; *Elliott v. Chicago Title Insurance Co.*

(1984), 123 Ill. App. 3d 226, 231, 462 N.E.2d 640.) If differing inferences can be drawn from the undisputed facts, then summary judgment should be denied. (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055, 374 N.E.2d 1302.) Because we are called upon to consider the propriety of summary judgment, we apply a *de novo* standard of review. *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.* (1992), 226 Ill. App. 3d 507, 510, 589 N.E.2d 1034.

The primary issue on appeal turns upon a question of law for which Wausau[1] concedes there is no direct Illinois precedent. Wausau suggests that this court extend the well-established duty of good faith and fair dealing owed by an insurer to its insureds (see *Pekin Insurance Co. v. Home Insurance Co.* (1985), 134 Ill. App. 3d 31, 33, 479 N.E.2d 1078), to require that the insurer, before exercising its right to settle a claim for policy limits, secure a complete release of each insured from any existing or potential liability resulting from the claim. In the context of this case, Wausau argues that "good faith" would have dictated that the insurers extinguish Elmhurst's liability to Shoemaker, in the same manner as that of Anderson and Lawrence, before surrendering policy limits in settlement. Further, as assignee of Anderson and Lawrence, Wausau asserts that Country Mutual and Pekin breached their duty to defend and indemnify by simply paying policy limits without protecting their insureds against further liability to Elmhurst in the third-party action.

■ None of the parties in this case dispute that an insurer must exercise good faith and deal fairly with all parties insured by its policies. (*National Surety Corp. v. Fast Motor Service, Inc.* (1991), 213 Ill. App. 3d 500, 572 N.E.2d 1083; *Pekin*, 134 Ill. App. 3d at 33.) If an insurer acts negligently, fraudulently, or in bad faith when negotiating a settlement on behalf of its insured, the insurer may be held liable for damages in excess of policy limits. (*Scroggins v. Allstate Insurance Co.* (1979), 74 Ill. App. 3d 1027, 393 N.E.2d 718; *Phelan v. State Farm Mutual Automobile Insurance Co.* (1983), 114 Ill. App. 3d 96, 448 N.E.2d 579.) However, bad faith will be found only where the insurer has engaged in "vexatious, unreasonable, or outrageous" conduct towards the insured parties. (*Pekin*, 134 Ill. App. 3d at 34.) In *Pekin*, this court ruled that an insurer's act of securing a settlement for policy limits on behalf of one insured without notifying or

---

[1]Wausau filed the sole appellant's brief in this case and apparently makes the arguments on appeal, as it did in the trial court, on its own behalf as well as on behalf of Elmhurst and as assignee of Anderson and Lawrence.

obtaining a discharge of another insured, in and of itself, did not constitute bad faith. In arriving at this conclusion, the *Pekin* court considered the fact that the other insured would receive the benefit of the settlement as a setoff against the damage award in the underlying suit. See *Pekin*, 134 Ill. App. 3d 31, 479 N.E.2d 1078.

■ Under the facts of this case, it is beyond dispute that Country Mutual's and Pekin's conduct was in good faith and the best interests of their insureds. The record establishes that these insurers foresaw potential liability for their insureds far in excess of policy limits, and accordingly, they seized upon an opportune settlement offer from the plaintiff in which they obtained a complete release for Anderson and Lawrence. Although Pekin also attempted to secure Elmhurst's inclusion in this arrangement, it was Shoemaker who specifically refused to release Elmhurst unless funds were tendered by Wausau. Shoemaker's refusal was certainly foreseeable considering the gravity of her injuries and the fact that, because Wausau had been actively representing Elmhurst in the suit, Shoemaker was most likely aware of Wausau's existence as a third insurer. In light of these circumstances, the argument that the "exclusion" of Elmhurst from settlement manifested bad faith on Country Mutual's and Pekin's part is unpersuasive. Wausau unquestionably was aware of the ramifications of this settlement at least one year before it transpired, yet it elected to refuse the offer and go to trial. There was no requirement that, merely because Elmhurst and Wausau chose to proceed in this manner, Country Mutual and Pekin should have compromised the interests of both Anderson and Lawrence and forego a settlement opportunity. It is an insurer's unreasonable failure to pursue a settlement offer, rather than its acceptance of one, which will expose it to liability for bad faith. (See, *e.g.*, *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928; *Phelan*, 114 Ill. App. 3d at 104; *Scroggins*, 74 Ill. App. 3d 1027, 393 N.E.2d 718.) Furthermore, although Wausau faults Country Mutual and Pekin for failing at the time of settlement to "acknowledge" an obligation to defend Elmhurst, it is unclear how Wausau believes such an acknowledgement would have altered Shoemaker's demand for a contribution from Wausau under the circumstances of this case. We therefore conclude that there was no evidence offered to establish that Country Mutual's or Pekin's actions towards Elmhurst amounted to the "vexatious, unreasonable, or outrageous" conduct which is necessary for a showing of bad faith.

■ Wausau further maintains that Country Mutual's and Pekin's exhaustion of policy limits did not discharge their obligation to defend Elmhurst in the Shoemaker trial, and that in refusing this defense,

the insurers acted in bad faith. Wausau also makes this argument as assignee of Anderson and Lawrence, on the basis of the insurers' contention that they had no further obligation to defend them in the third-party suit.

The determination of the scope of an insurer's duty to defend requires an examination of its undertaking as set forth in the policy language. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 55, 514 N.E.2d 150.) Both Country Mutual's and Pekin's policies contained the express provision that "[o]ur payment of the liability insurance limit ends our duty to defend or settle." Pekin's umbrella policy similarly stated that "the company shall not be obligated to defend any suit after the company's liability has been exhausted."

In *Zurich*, the supreme court held that when an insurer has properly elected to exhaust its policy limits by paying a judgment or settlement, it has no further obligation to defend any actions against its insured, whether such actions are pending at the time of exhaustion or commenced thereafter. (*Zurich*, 118 Ill. 2d at 52-53.) The exhaustion of limits clause in the policy in *Zurich* provided that "the company shall not be obligated *** to defend *any* suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." (Emphasis in original.) *Zurich*, 118 Ill. 2d at 55-56.

As in *Zurich*, the language of the policies in this case unambiguously manifested the parties' intention to limit the duty to defend to the time before policy limits were properly exhausted, as they were in this case. As stated above, Country Mutual and Pekin clearly acted in good faith in tendering policy limits for a release of two insureds, and there is no evidence that Wausau was not fully aware of the implications of that settlement for Elmhurst. Thus, there was no evidence of a breach of contract or bad faith in this case. In any event, Elmhurst has received the maximum amount it could have received from Country Mutual and Pekin, as it will have the benefit of their policy limits as a setoff against the Shoemaker judgment. See *Pekin*, 134 Ill. App. 3d 31, 479 N.E.2d 1078.

Additionally, contrary to what Wausau argues, Country Mutual and Pekin did not improperly leave Anderson and Lawrence exposed to liability. Wausau's indemnity action was not yet pending at the time of the settlement, and these insurers complied with the terms of their contracts in availing themselves of the settlement offer. Accordingly, Wausau's contention here lacks merit.

■ Wausau lastly argues that the breach by Country Mutual and Pekin of their duties to defend and deal in good faith with their in-

sureds entitle the insureds to damages consisting not only of any sums due Shoemaker, but also of defense costs Wausau incurred and is incurring for the underlying case. As a basis for the alleged entitlement to these amounts, Wausau claims equitable contribution, and also Anderson's and Lawrence's assignment of their rights of action against their insureds.

While there is precedent for an excess insurer's recovery of damages against a primary insurer (*New Amsterdam Casualty Co. v. Certain Underwriters at Lloyds, London* (1966), 34 Ill. 2d 424, 216 N.E.2d 665), an insurer is not liable for damages in excess of policy limits unless bad faith is shown in the primary insurer's refusal to defend its insured. (See *Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 398, 442 N.E.2d 245; *Pekin*, 134 Ill. App. 3d at 35.) Assuming, but not deciding, that Country Mutual and Pekin were Elmhurst's primary insurers, Wausau has failed to provide a factual basis for its claim of bad faith by these insurers. Accordingly, we do not reach the issue of damages in this case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.