# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Kirk v. Allstate Insurance Co.*, 2012 IL App (5th) 100573

---

| | |
|---|---|
| Appellate Court Caption | STEVEN THOMAS KIRK, as Assignee for Enver Hamiti, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-10-0573 |
| Filed | May 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an accident in which plaintiff's motorcycle was struck by a vehicle insured by defendant, the trial court erred in entering partial summary judgment for defendant on plaintiff's complaint as the assignee of the driver of the insured vehicle alleging that defendant insurer acted in bad faith when it paid the policy limits in return for a release of claims against its insured, but not claims against the driver of the vehicle, since the insurer never advised the driver of any offers or demands and he was not advised to seek counsel or that he could be personally liable for damages in excess of the policy limits, the insurer failed to take notice of the driver's correct address and sent correspondence to the wrong address, the driver was never consulted before his name was removed from the release, and the insurer's payment of the policy limits did not excuse it from its duty to defend the driver. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 10-L-50; the Hon. Clarence W. Harrison II, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Chris Kolker, of Kolker Law Offices, P.C., of Belleville, for appellant. |
| | Michael J. Bedesky, of Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., of Edwardsville, for appellee. |
| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion. |
| | Justices Welch and Stewart concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Steven Thomas Kirk, as assignee for Enver Hamiti, appeals from an order of the circuit court of Madison County granting partial summary judgment in favor of defendant, Allstate Insurance Company (Allstate). The issue raised on appeal is whether the trial court erred in finding that Kirk induced a release of Hamiti, thereby absolving Allstate of any bad faith, and in granting partial summary judgment in favor of Allstate. We reverse and remand.

¶ 2                                    FACTS

¶ 3    On June 30, 2006, Hamiti was driving a truck owned by Lindsey Skenderi, when he ran a stop sign and collided with a motorcycle operated by Kirk. Kirk's leg was amputated as a result of the injuries he sustained in the accident. Skenderi's truck was insured by Allstate with liability limits in the amount of $100,000 per person and $300,000 per accident. Skenderi lived at 650 State Route 162 in Maryville, Illinois. Hamiti was also insured by his own automobile liability policy with Mercury Insurance Company (Mercury). His policy provided liability limits in the amount of $50,000 per person and $100,000 per accident.

¶ 4    On July 14, 2006, an Allstate claims adjuster, Jammie Kleparski, called Hamiti and recorded his statement. The adjuster specifically asked Hamiti if he lived at 650 State Route 162 in Maryville, Illinois. Hamiti told the adjuster he did not live there, but rather lived at 253 North 13th Street in Wood River, Illinois. Despite learning Hamiti's current address, Allstate sent all communications to Hamiti at the incorrect Maryville address until at least March 2008.

¶ 5    Kirk retained the Meyer Law Firm to represent him. After Hamiti's recorded statement was obtained, Allstate assigned its employee, Rick Green, as the adjuster in the matter. Green

acknowledged that liability was clearly on Hamiti and that Hamiti was an insured under the Allstate policy.

¶ 6        Given the extent of Kirk's injuries, the Meyer Law Firm believed that the injury was worth more than the combined policy limits of the Allstate and Mercury policies, which amounted to $150,000. Amy Meyer of the Meyer Law Firm made policy limit demands to both Allstate and Mercury. In particular, in September 2006, Meyer advised Green that the medical bills exceeded $100,000. Green admitted that early in negotiations both he and Allstate were aware that this was a case in which damages exceeded liability limits.

¶ 7        Meyer also indicated that her law firm was considering pursuing Skenderi's personal assets. Meyer believed that it was possible that Skenderi owned restaurants throughout the Midwest. Meyer did not show any interest in pursuing Hamiti's personal assets, but told Green she would pursue recovery from Hamiti's Mercury policy. Green advised Skenderi via letter that Kirk's damages exceeded the policy limits of her Allstate policy and recommended that she might want to hire her own attorney to protect her personal assets. While a similar letter was mailed to Hamiti, Hamiti never received it because Allstate sent it to the wrong address.

¶ 8        Because this was an excess case, Green had "alert conferences" with his supervisor, Sonje Sturdivant. On September 29, 2006, Sturdivant advised Green as follows:

"Please be sure to check client file for alternate policies to make sure that we do not have excess coverage. Was there a formal demand for the limit? If so, we need to respond in writing with a copy to the insured. Also, as documented, you will need to have insured hire his own counsel to handle the claim against his personal assets. Lastly, we will not issue payment until we can secure a release so if they are going to pursue insured, we will not issue check."

Green replied to Sturdivant that he would check for other policies and make sure a release was signed before issuing a check for the limits of liability. Green agreed that a release would include Hamiti.

¶ 9        On October 17, 2006, Green offered the $100,000 policy limits to Meyer and included a release in the correspondence. Meyer e-mailed Green back the same day and thanked him for the offer to settle, but advised him that she was going to sue both Skenderi and the driver, Hamiti. Meyer also said, "Upon settlement with Allstate, you will obviously be dismissed out."

¶ 10       On November 1, 2006, at 3:04 p.m., Meyer e-mailed Green, telling him she "would like to get the entire claim settled ASAP." She went on to tell Green that the driver, Hamiti, did have insurance with Mercury and she was presently working on that. She further advised Green as follows: "We need to change the language of the settlement and release to include only your insureds, and to provide an exception for any other insurance coverage they may have which may provide coverage (doubt there is any), as they are not returning the affidavit." On that same date at 3:07 p.m., Green replied: "No problem. I will send out new release today taking insured driver's name off of it." The following day, Green sent another release, which did not include Hamiti. Plaintiff signed the second release that excluded Hamiti on February 21, 2006.

¶ 11    Green admitted that there were no negotiations regarding the removal of Hamiti's name from the release. Meyer asked Green to remove it so she could pursue accessing the liability coverage provided to Hamiti by Mercury, and Green complied. Green admitted that he never spoke to Hamiti and that the only communication Allstate had with Hamiti was the recorded statement made in July 2006.

¶ 12    Green further admitted that if a letter was not sent in July 2006 to Hamiti to the correct address, that would be an element of bad faith. Green stated that Hamiti was never advised of any offers or demands and was never sent a copy of the letter from the Meyer Law Firm which said that plaintiff's medical bills exceeded the policy limits. Green also admitted that Hamiti should have been consulted before language protecting him was removed from the release.

¶ 13    On February 20, 2007, Kirk filed an action against Hamiti for personal injuries he received in the June 30, 2006, accident. In March 2007, Allstate received notice that Hamiti was being sued but failed to notify Hamiti. Allstate did not provide Hamiti with an attorney until February 29, 2008. The case went to jury trial on November 23, 2009, after which a judgment was entered on the verdict in the amount of $1.375 million, with a $100,000 setoff for the policy limits paid by Allstate, for a total of $1.275 million, plus costs.

¶ 14    On January 20, 2010, after negotiating a settlement with Mercury, Kirk obtained an assignment of rights from Hamiti to sue Allstate for bad faith. On that same day, this bad-faith case was filed with Kirk as the assignee of Hamiti in which plaintiff alleged, *inter alia*, that Allstate violated its duties to Hamiti and obtained a release that excluded Hamiti and exposed him to personal liability. The lawsuit further alleged that Allstate wrongfully refused to defend Hamiti and did not properly defend him at trial.

¶ 15    On September 27, 2010, Allstate filed a motion for partial summary judgment. On October 29, 2010, the trial court entered partial summary judgment in favor of Allstate. The trial court held that it was granting summary judgment in favor of Allstate "because Kirk induced the release" that omitted Hamiti. Plaintiff timely appeals.

¶ 16                                              ANALYSIS

¶ 17    The issue raised on appeal is whether the trial court erred in finding that Kirk induced a release of Hamiti, thereby absolving Allstate of any bad faith, and in granting partial summary judgment in favor of Allstate. Kirk argues the trial court's ruling was in error because it failed to consider the correct status of the parties. As assignee, Kirk stood in the shoes of the insured, Hamiti, and therefore, Kirk's status in the underlying case is not even relevant. In the instant case, Kirk insists that the facts show that Allstate committed bad faith by taking out language in a release that protected Hamiti, who was Allstate's insured under the policy, without informing him it was doing so and without obtaining his consent. Allstate replies that the trial court was correct in entering partial summary judgment in its favor because Kirk induced the release in the underlying action. Allstate further replies that a bad-faith case is untenable here because it paid its policy limits, and bad-faith cases can only arise where an insurance company fails to pay its policy limits. After careful consideration, we agree with plaintiff.

¶ 18    As a general rule, summary judgment is encouraged as an aid to the expeditious disposition of a lawsuit. *Drury Displays, Inc. v. Brown*, 306 Ill. App. 3d 1160, 1164, 715 N.E.2d 1230, 1234 (1999). However, a movant may be granted summary judgment where all the pleadings, discovery materials, admissions, and all permissible inferences, analyzed in the light most favorable to the nonmoving party, so clearly favor the movant that no fair-minded individual could dispute the movant's right to a judgment in his or her favor. *Wysocki v. Bedrosian*, 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344 (1984). The trial court's decision to grant summary judgment will be affirmed if, after examining the record, there is no genuine issue of material fact and the movant was entitled to a judgment as a matter of law. *Fremont Indemnity Co. v. Special Earth Equipment Corp.*, 131 Ill. App. 3d 108, 112, 474 N.E.2d 926, 930 (1985). In an appeal from a summary judgment ruling, review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992); *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535, 538, 727 N.E.2d 376, 379 (2000).

¶ 19    An assignment takes place when some identifiable interest is transferred from the assignor to the assignee. *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 100, 898 N.E.2d 216, 229-30 (2008). A valid assignment requires proof of intent to make the assignment and manifestation of that intent, and the assignor must have " 'either actually or potentially the thing which he attempts to assign.' " *Cincinnati Insurance Co.*, 387 Ill. App. 3d at 100, 898 N.E.2d at 230 (quoting *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 350, 736 N.E.2d 145, 155 (2000)). The assignee receives all the assignor's right, title, or interest in the thing assigned and can claim no greater right or interest than the assignor possessed. *Cincinnati Insurance Co.*, 387 Ill. App. 3d at 100, 898 N.E.2d at 230. A claim that is assigned prior to a judgment constitutes a sufficient potential claim to make the assignment valid. *Cincinnati Insurance Co.*, 387 Ill. App. 3d at 101, 898 N.E.2d at 230-31 (citing *Daugherty v. Blaase*, 191 Ill. App. 3d 496, 499-500, 548 N.E.2d 130, 132 (1989)).

¶ 20    In the instant case, Hamiti assigned to Kirk his right to recover from Allstate for any bad faith that may have taken place in settling Kirk's claim against Hamiti. After the assignment was made, Kirk received all Hamiti's rights and interest in regard to Hamiti's bad-faith claim against Allstate and now stands in Hamiti's shoes. Accordingly, the issue of whether Kirk induced the release that omitted Hamiti is irrelevant in the instant case. As assignee, Kirk is entitled to all of Hamiti's right, title, or interest in the bad-faith claim against Allstate. If Kirk somehow had coerced or tricked Allstate in removing Hamiti's name from the release, that might be a reason for entering partial summary judgment in favor of Allstate.

¶ 21    However, the record before us is completely devoid of any type of coercion or trickery involved in the underlying action. On October 17, 2006, Green offered the policy limits to Meyer and sent a release, which included Hamiti. On November 1, 2006, at 3:04 p.m., Meyer e-mailed Green and asked him to change the language of the release to cover only "your insureds" in order to provide an exception for any other coverage which may exist. Three minutes later, at 3:07 p.m., Green responded: "No problem. I will send out new release today taking insured driver's name off of it." Green admitted no negotiations took place regarding the removal of Hamiti's name from the release. Meyer asked Green to omit Hamiti's name,

and he did so.

¶ 22    At best, the issue of inducement would be a question for the finder of fact, and thus, we find that the trial court erred in entering partial summary judgment in favor of Allstate on the basis of inducement. The fact that Kirk's attorney in the underlying action sought that Hamiti be excluded from the release, without any type of coercion or trickery, does not relieve Allstate of its duty to Hamiti. If Allstate truly believed the release should only provide a release for Hamiti to the extent that he had other coverage with Mercury or perhaps some other insurance company, Allstate should have specifically stated that in the release language and should not have omitted Hamiti entirely from the release. Instead it appears that Allstate tried to clear itself from exposure in an excess case at the expense of Hamiti. Here, Kirk, as assignee, stands in Hamiti's shoes, and if the facts show that Hamiti was the victim of bad faith by Allstate, Hamiti has assigned his right to recover against Allstate to Kirk.

¶ 23    We next consider Allstate's claim that partial summary judgment was properly entered in its favor because Hamiti received a complete setoff of the $100,000 settlement. Allstate insists that because Hamiti received the benefit of the full $100,000 liability limits as a setoff as a matter of law, Allstate's settlement cannot represent bad faith, and Allstate's conduct cannot be considered vexatious or unreasonable. Allstate insists bad faith can only arise if it failed to pay its policy limits. In short, Allstate asks us to totally disregard its treatment of Hamiti in the underlying action.

¶ 24    Illinois cases have long held that an insurer cannot discharge its duty to defend simply by paying policy limits. *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 442 N.E.2d 245 (1982); *American Standard Insurance Co. v. Basbagill*, 333 Ill. App. 3d 11, 775 N.E.2d 255 (2002); *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535, 727 N.E.2d 376 (2000). In *Conway*, the insurer argued that its payment of policy limits to the claimant discharged it from its duty to defend. Our supreme court disagreed and held that "since the insurer's duty to defend its insured is not dependent upon a duty to indemnify, but arises from the undertaking to defend stated in the policy, an insurer's payment to its policy limits, without more, does not excuse it from its duty to defend." *Conway*, 92 Ill. 2d at 394, 442 N.E.2d at 247.

¶ 25    In *Douglas*, we noted that there are "strong public policy arguments against allowing insurers to discharge their duty to defend by paying policy limits and then leaving the insured to fend for himself." *Douglas*, 312 Ill. App. 3d at 543, 727 N.E.2d at 382. To allow insurers to partake in such practice would be to render a near nullity one of the most significant protections afforded by the policy, a defense. *Douglas*, 312 Ill. App. 3d at 543, 727 N.E.2d at 382 (citing *Simmons v. Jeffords*, 260 F. Supp. 641, 642 (E.D. Pa. 1966)). We require insurers to do more than simply pay policy limits because if we did not, " ' "the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him," ' " and this would be a breach of the insurer's contract to defend. *Douglas*, 312 Ill. App. 3d at 543, 727 N.E.2d at 382 (quoting *National Casualty Co. v. Insurance Co. of North America*, 230 F. Supp. 617, 622 (N.D. Ohio 1964) (quoting 8 John Alan Appleman, Insurance Law and Practice § 4685 (1962))).

¶ 26    In the instant case, Green admitted that Hamiti, as the driver of Skenderi's truck which

was involved in the accident, was an insured under the Allstate policy which insured the truck. In negotiating settlements of cases in which the recovery may exceed policy limits, the insurer must give at least as equal consideration to the insured's interest as it does to its own. *Edwins v. General Casualty Co. of Wisconsin*, 78 Ill. App. 3d 965, 968, 397 N.E.2d 1231, 1232 (1979); see also *O'Neill v. Gallant Insurance Co.*, 329 Ill. App. 3d 1166, 1172, 769 N.E.2d 100, 106 (2002). This did not happen here.

¶ 27    Green admitted that he never spoke with Hamiti, and Allstate never advised Hamiti of any of the offers or demands made in the case, nor did it advise him that he should seek counsel due to the excess nature of the case and that he could be held personally responsible for any damages in excess of the policy. The only contact Allstate had with Hamiti was when Allstate contacted Hamiti and took a recorded statement. At that time, Hamiti informed Allstate of his address, but Allstate failed to take notice of the correction and all correspondence was sent to an incorrect address.

¶ 28    Green also admitted that Hamiti should have been consulted before language protecting him was removed from the release. The record before us shows that Green's supervisor specifically told Green to make sure that the insured was released before a settlement check was issued. Despite these directions, Green issued the check to Kirk without securing a release for Hamiti and in fact took Hamiti's name off of the release. Thereafter, Kirk filed a personal injury action against Hamiti, and after a jury trial a verdict in excess of $1 million, for which Hamiti is personally liable, was entered against Hamiti. Allstate's payment of $100,000 in policy limits did not discharge Allstate of its duty to defend Hamiti, nor did it give Allstate the right to release Skenderi at the expense of Hamiti.

¶ 29    Allstate asserts that it did not have any "leverage to negotiate" and was left with no choice but to sacrifice Hamiti for Skenderi. In support of its assertion, Allstate cites *Pekin Insurance Co. v. Home Insurance Co.*, 134 Ill. App. 3d 31, 479 N.E.2d 1078 (1985), and *Country Mutual Insurance Co. v. Anderson*, 257 Ill. App. 3d 73, 628 N.E.2d 499 (1993). Both are distinguishable from the instant case.

¶ 30    *Pekin* is distinguishable from the instant case for several reasons. First, *Pekin* was decided long before our ruling in *Douglas*. Second, the facts in *Pekin* are distinguishable because the driver in *Pekin* worked for the White Sox, so there was an agency issue involved, which is totally absent in the instant case. Third, no excess verdict was issued in *Pekin*, whereas in the instant case Hamiti is exposed to personal liability of over $1 million because Allstate failed to communicate with him.

¶ 31    As for *Anderson*, that case involved three parties and their insurers. The plaintiff, Katherine Shoemaker, sustained catastrophic injuries when the vehicle in which she was riding collided with a truck being driven by Anderson. At the time of the accident, the truck was leased by Lawrence and was transporting gravel under a contract with Elmhurst. *Anderson*, 257 Ill. App. 3d at 74, 628 N.E.2d at 500. Shoemaker proposed a settlement involving all the parties, but only Anderson, Lawrence, and their insurers agreed. Elmhurst and its insurer, Wausau, refused to participate in the settlement. The first two parties agreed to settle the case for $1.55 million. A hearing was held and a good-faith finding was entered by the trial court. Elmhurst proceeded to trial, after which a jury returned a verdict in excess

of $4.22 million, and after the setoff of $1.55 million, Elmhurst remained personally liable for the remaining amount. Elmhurst was only covered by a $500,000 policy through Wausau. The *Anderson* court specifically stated:

> "Wausau unquestionably was aware of the ramifications of this settlement at least one year before it transpired, yet it elected to refuse the offer and go to trial. There was no requirement that, merely because Elmhurst and Wausau chose to proceed in this manner, Country Mutual and Pekin should have compromised the interests of both Anderson and Lawrence and forego a settlement opportunity. It is an insurer's unreasonable failure to pursue a settlement offer, rather than its acceptance of one, which will expose it to liability for bad faith." *Anderson*, 257 Ill. App. 3d at 79, 628 N.E.2d at 503.

The major distinctions between *Anderson* and the instant case are the issues of notice and consent. In *Anderson*, Elmhurst was included in the settlement discussions and was aware it could be exposed to personal liability, whereas Hamiti was not aware of settlement negotiations and was not informed he could be held personally responsible. Additionally, there was no good-faith hearing in the present case as there was in *Anderson*.

¶ 32   We see no need to go into a protracted discussion of bad faith at this juncture. Suffice it to say, there are genuine issues of material fact present here that preclude entry of partial summary judgment in favor of Allstate. Accordingly, we reverse the order of the trial court granting partial summary judgment in favor of Allstate and remand for further proceedings consistent with this opinion.

¶ 33   For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed and the cause remanded for further proceedings.

¶ 34   Reversed and remanded.