# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph S. Cotteta, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1043 C.D. 2019 |
| | : | ARGUED: November 9, 2020 |
| Montgomery County Transportation | : | |
| Authority, County of Montgomery, | : | |
| Plymouth Township, Ronald Battaglia | : | |
| and Susan Battaglia | : | |
| | : | |
| v. | : | |
| | : | |
| Ram Construction, Inc. and Ludgate | : | |
| Engineering Corporation | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge (P)
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  March 15, 2021**

Joseph S. Cotteta appeals from an order of the Court of Common Pleas of Montgomery County denying his petition for a preliminary injunction and denying what he characterized as a "petition for a permanent injunction" (one part mandatory injunction and one part restraining injunction) against the Montgomery County Transportation Authority and Ronald and Susan Battaglia.[1]  We affirm.[2]

---

[1] Ram Construction, Inc. (Ram), and Ludgate Engineering Corporation (Ludgate) filed Notices of Non-Participation.

[2] In September 2019, this Court denied the Battaglias' motion to quash Cotteta's notice of appeal, stating that the denial of an injunction petition was appealable as of right pursuant to Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure.

This matter originated with the planning and completion of a large-scale road project known as the Lafayette Street Extension Project that affected Ridge Pike and surrounding businesses and residences in the Plymouth Meeting and Norristown areas. Cotteta owns one of the affected properties, a house used as a rental property located at 1 Conshohocken Road. The back of Cotteta's rental property abuts the back of the other affected property at issue, the Authority's former public maintenance facility at 1440 East Ridge Pike. In November 2013, the Battaglias bought the facility and converted it into a used car business. (Amended Complaint, ¶ 8; Reproduced Record "R.R." at 11a.)

In his amended complaint described below, Cotteta makes the following allegations. As part of the project, the Authority held several meetings that included local property owners. (*Id*., ¶ 12; R.R. at 11a.) At these meetings, an agreement was reached whereby two parking spaces were designated for Cotteta's use within a paved area known as "Diamond Avenue Alley," partially located on Cotteta's property and partially on the property currently owned by the Battaglias. (*Id*., ¶ 13; R.R. at 12a.) Cotteta further alleges that the Battaglias' predecessor in title created the private easement for a driveway and parking for his benefit--as shown on a plan recorded with the Montgomery County Recorder of Deeds. (*Id*., ¶ 9; R.R. at 11a.) However, a wall and fence were subsequently constructed within the easement area on the Battaglias' property thereby allegedly obstructing Cotteta's ability to park in the two spaces. (*Id*., ¶¶ 24 and 25; R.R. at 13a-14a.)

In November 2015, Cotteta filed a complaint against the Battaglias seeking to enforce the easement. In June 2016, he filed an amended complaint against the Authority, Montgomery County, Plymouth Township, and the

2

Battaglias.[3]  He set forth four causes of action stemming from interference with an alleged private access easement for a driveway and parking that benefitted his property.

In Count 1 of the amended complaint, against the Battaglias,[4] Cotteta alleged that his suit was to stop their "continuing, knowing, intentional and unwarranted interference with and obstruction of an easement for a driveway and parking purposes which benefits [Cotteta]."  (*Id.*, ¶ 4; R.R. at 10a.)  Accordingly, Cotteta requested that the trial court preliminarily and permanently enjoin the Battaglias from interfering in any way with his property rights as authorized by the easement; direct the Battaglias to remove the wall and fence from the easement area and regrade that area so as to permit him to park two motor vehicles in that area as shown on the plan and as accessed through Diamond Avenue Alley; and grant such other relief as may be necessary.  (*Id.*, Wherefore Clauses; R.R. at 14a-15a.)

In Count 2, also against the Battaglias, Cotteta asserted a claim for money damages that he allegedly suffered as a result of their unwarranted interference with his peaceful use and enjoyment of the easement.  Accordingly, Cotteta requested a judgment in excess of $50,000.  (*Id.*, ¶¶ 31 and 32; R.R. at 15a.)

In Count 3, against the Authority and the County, Cotteta alleged that the two entities agreed as part of the project to provide two fully paved and

---

[3] In June 2016, the Battaglias filed a cross-claim and a joinder complaint against Ram and Ludgate, respectively, the contractor and engineering firm for the Authority's project.  Ram filed a motion for summary judgment, which the trial court granted.  Additionally, the trial court dismissed the joinder complaint and all cross-claims against Ram.  The Battaglias appealed and Ram's motion to quash notice of appeal followed.  Concluding that the trial court's order was not final, we granted Ram's motion to quash the appeal. *Cotteta v. Montgomery Cnty. Transp. Auth., Cnty. of Montgomery, Appeal of: Ronald Battaglia & Susan Battaglia* (Pa. Cmwlth., No. 1540 C.D. 2019, filed November 2, 2020).

[4] Although Cotteta sued both Battaglias, he references them collectively as "Defendant Battaglia" in his complaint.  (Amended Complaint, ¶ 2(a); R.R. at 2a.)

constructed parking spaces on, or adjacent to, his property. The spaces would be located partially on his property and partially on the Battaglias' property. Alleging that those entities refused and continue to refuse to provide these spaces, Cotteta prayed that the trial court enter an order requiring them to provide the agreed-upon spaces. (*Id*., ¶¶ 34-36; R.R. at 15a-16a.)

In Count 4, against the Township, Cotteta alleged that the Battaglias failed to construct improvements set forth in plans approved by the Township and that the Township failed to require them to comply with the terms of an alleged land development waiver. In pertinent part, the averments provided:

> 42. The plans . . . clearly showed the area for the [] parking spaces and further provided that there would be no fencing or buffering on the Battaglia Property in the area adjacent to [Cotteta's] [P]roperty and that a [twenty-five-foot] long retaining wall would be constructed in the small area adjacent to [Cotteta's] Property.
>
> 43. Notwithstanding the plans that were submitted . . . and the agreement of Defendant Battaglia to construct [the] project in accordance with those plans, Defendant Battaglia increased the length of the retaining wall, eliminated the two . . . parking spaces and installed a wall in an area of Defendant Battaglia's property where a wall was not permitted to be installed, thereby obstructing and preventing [Cotteta] from use and enjoyment of the area in the Easement for parking.
>
> . . . .
>
> 46. Defendant Battaglia's plans approved by [the] Township contain the following notes which are binding upon . . . Battaglia:
>
> (a) In the area set aside for the . . . parking spaces a note states "driveway to offsite buildings by others".

4

        (b) Proposed retaining wall approximately [twenty-five feet] in length. The retaining wall as constructed is [sixty-three feet] in length.

        (c) No fence or buffer in this area to allow access to adjoining lots.

47. [The] Township has failed and refused . . . to enforce the terms and provisions of the Land Development Waivers, the approved plans with regard to the parking spaces for Plaintiff Cotteta, the length and location of the retaining wall and the installation of a fence in an area where fencing was not permitted.

(*Id*., ¶¶ 42, 43, 46, and 47; R.R. at 16a-19a.) Accordingly, Cotteta requested that the trial court direct the Township to require the Battaglias to construct the driveway shown on the plan; remove the retaining wall to the extent that it is not shown on the plans; remove the fence that was installed along the area between the properties; and grade and improve the area within the easement consistent with the plans. (*Id*., Wherefore Clause; R.R. at 19a.)

Three years later, in March 2019, Cotteta filed a petition for a "restraining order" against the Battaglias and "injunctive relief" against the Authority, therein again requesting that the trial court grant injunctive relief and direct the Authority to complete the construction of Diamond Avenue Alley, allow the Authority to access 1440 Ridge Pike to complete the project, and enjoin the Battaglias from interfering with the construction of Diamond Avenue Alley. (Petition, Wherefore Clause; R.R. at 40a.) Cotteta did not specifically list the Township in his petition. (Township's Brief at 5.)

Following a May 2019 hearing, the trial court denied Cotteta's request for relief. Noting that the injunctive relief was the same relief requested in the amended complaint, the trial court opined that Cotteta was attempting

inappropriately to short circuit the trial process necessary to adjudicate the permanent injunctive relief requested. Consequently, the trial court treated the petition as a request for a preliminary injunction, which was denied, given the failure to meet the necessary requirements, particularly a showing of irreparable harm. (Trial Court's June 12, 2019 Op. at 9-12.) Cotteta's appeal followed.

Cotteta raises the following issues on appeal: 1) whether the trial court erred in conducting a hearing for injunctive relief as one for a preliminary injunction, where the relief sought was for a permanent injunction; 2) whether the trial court erred in ruling that Cotteta could not present self-authenticating documents as evidence in support of his petition; 3) whether the trial court erred in holding that a subpoena could not be served by mail; 4) whether the trial court erred in *sua sponte* obtaining documentation of Cotteta's participation in the Accelerated Rehabilitative Disposition (ARD) Program for charges related to tearing down the fence where he did not plead guilty and reading the incident report into the record as credible evidence; and 5) whether the trial court erred in rendering relief that Cotteta did not seek in his petition.

As a threshold matter, the trial court was correct in treating Cotteta's petition as one for a preliminary injunction. The fact that Cotteta never presented his petition as such and used different terminology is irrelevant. This matter was not ripe for a final injunction trial.[5]

In order to establish grounds for a preliminary injunction, the moving party must establish that the relief is necessary to prevent immediate and irreparable

---

[5] As the Battaglias noted in their brief: "This case, heard without the completion of discovery, the filing of [required] pre-trial memoranda and a pretrial conference was an end-run to avoid the provisions governing trial in Montgomery County." (Battaglias' Brief at 9.) Whatever the motive behind Cotteta's filing, we agree with the Battaglias and the trial court that the matter was not ready for a permanent injunction trial.

harm that cannot be compensated by money damages; that greater injury will result from denying the injunction than from granting it; that the injunction will restore the parties to the status quo as it existed before the alleged wrongful conduct; that the alleged wrongful conduct is manifest; and that the moving party's right to relief is clear. *Anglo-Am. Ins. Co. v. Molin*, 670 A.2d 194, 196 (Pa. Cmwlth. 1995). The moving party bears a heavy burden of proof. *Id.*

At the May 2019 hearing, Cotteta presented the testimony of his wife, Sandy Cotteta, and Ronald Battaglia as on cross. The trial court accepted Mr. Battaglia's testimony as credible and concluded that Mrs. Cotteta's testimony only bolstered Battaglia's. Additionally, based on the evidence adduced at the hearing, the trial court ultimately characterized this case as a simple dispute between neighbors over parking spaces and a fence.

In pertinent part, the trial court found as follows. In 2015, the Battaglias erected a solid white wooden fence on their property but provided a very narrow passageway to allow access from the grass on their property to the rear of Cotteta's property over which his residential tenants could traverse on foot by way of a shortcut from the Battaglias' property. This single-file shortcut with high sides was dark and consisted of dirt and grass. Although the Battaglias became concerned about the shortcut, they left it alone. Subsequently, for unknown reasons, Cotteta in 2018 went onto the Battaglias' property and destroyed the fence. In the words of the trial court:

> Concerned with the obvious erratic behavior of [Cotteta] and [their] growing concern over the years of possible economic liability in the event of injury caused by the condition on [their] property created by [the shortcut], [the Battaglias] simply and prudently[] sealed up the space in the fence on [their] own property with the type of white,

7

wooden fence similar to that that was already existing, so that it looks like one continuous fence.

(Trial Court's June 12, 2019 Op. at 3.) However, even with the elimination of the shortcut, Mrs. Cotteta

confirmed she and the sole tenant in [Cotteta's] house could easily park on the street in the front of the [] house or park in the common parking lot (Diamond [Avenue] Alley) and walk out where her car came into the common parking area on Ridge Pike along the safe sidewalk to the front of [the] house.

(*Id*. at 11.) Mr. Battaglia testified that he "not only would not object to this, but he would encourage it." (*Id*.)

In summary, the trial court concluded:

[Cotteta's] sole complaint . . . is that [he] and his tenant can no longer trespass on [the Battaglias'] land by walking from the public lot, known as Diamond [Avenue] Alley, where the public and [Cotteta] and [his] tenants may park if they want to, to go through the "shortcut" . . . and get to the rear of [Cotteta's] rental house, which shortcut was formerly created by [Mr. Battaglia], just out of the goodness of his heart to be a "good neighbor."

(*Id*. at 3-4.) Accordingly, the trial court determined:

There is absolutely no . . . justification for this court to enter a mandatory injunction, directing Battaglia to tear down a perfectly good and appropriate fence, on Battaglia's own property, any more so than to order him to tear down the black iron fence on his property that protects from liability to people, not properly on his property, who may fall off the cliff portion of his property to the concrete lower lot on his property below. First, the court has no "power" to order a property owner to remove a fence that

8

is properly on his own property. Second, [Cotteta] has not met his burden of proving the elements in order to obtain a mandatory injunction. And, third "mandatory" injunctions require even more persuasion than "restraining" injunctions.

(*Id*. at 4-5.)

Nothing that Cotteta requested in his petition or addressed at the hearing pertained to immediate and irreparable harm or restoring the status quo. The evidence established only that Cotteta's tenants were required to walk farther, not that they were subject to harm. Additionally, the status quo has not changed since Cotteta filed the 2015 complaint. The Battaglias have owned the subject property since 2013 and building a parking lot would change the status quo, not restore it.

As for the evidentiary issues, questions as to the admissibility of evidence lie within the sound discretion of the trial court. *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014). An abuse of discretion occurs where there is manifest unreasonableness, partiality, prejudice, bias, ill will, or such lack of support that the ruling is clearly erroneous, not where an appellate court would have reached a different result. *Id.* Accordingly, absent an abuse of discretion, an appellate court should not reverse such rulings. *Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999).

Cotteta asserts that the document that he sought to admit as P-6, purportedly an undated diagram of part of Diamond Avenue Alley, was self-authenticating and that the trial court should have admitted it. However, the witness to whom it was presented, Mr. Battaglia, testified that he had never seen it before and no other witness was called to authenticate it. Counsel for Cotteta did not argue at the time it was offered that it was self-authenticating, let alone support such a claim. (May 30, 2019 Hearing, Notes of Testimony "N.T." at 127-30; R.R. at 521a-

9

24a.) This ruling was within the realm of the trial court's discretion and, accordingly, we conclude that it did not err in sustaining the objection to the admission of the proffered exhibit.

Cotteta next alleges that the trial court erred in ruling that he could not serve a subpoena by mail on Matthew Edmond, chief of the Authority, and that it had to be served by a constable or other personal service. At the hearing, the trial court surmised that the court administrator had scheduled the May 30, 2019 hearing on April 30, 2019, giving Cotteta thirty days to effect service on any witness to testify at the hearing. However, the witness did not receive the subpoena until the morning of the hearing. Consequently, the trial court ruled that the subpoena was not served reasonably in advance of the hearing. (*Id*. at 30-32; R.R. at 424a-26a.) On review, we find no abuse of discretion in the trial court's ruling.

As for the trial court's consideration of Cotteta's participation in the ARD program, there is no indication that this evidence was essential to the determination that Cotteta failed to satisfy the elements necessary for injunctive relief. In what can be characterized as surplusage, the trial court merely opined that Cotteta exhibited erratic behavior and tore the fence down for some unknown reason. Additionally, the fact that Cotteta was criminally charged with tearing down the fence was admitted without objection. (*Id*. at 45 and 146; R.R. at 439a and 540a.)

As for Cotteta's argument that the trial court improperly changed the focus of the petition from an incomplete paved lot to a fence dispute between neighbors, the trial court observed that "[n]o evidence was presented that . . . [the] Authority failed to complete the public parking lot." (Trial Court's Aug. 29, 2019 Op. at 3.) "[T]he only real issue presented at the hearing had to do with the Battaglias

10

sealing up the white fence on their property [and] closing the passageway from their property to the rear of [Cotteta's] property." (*Id*. at 4.)

Accordingly, we conclude that the trial court properly considered this matter in the context of a preliminary injunction and did not err in concluding that Cotteta failed to meet the elements necessary for granting relief. For the above reasons, therefore, we affirm.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph S. Cotteta,                                    :
                    Appellant        :
                                 :
                v.        :    No. 1043 C.D. 2019
                                 :
Montgomery County Transportation     :
Authority, County of Montgomery,     :
Plymouth Township, Ronald Battaglia  :
and Susan Battaglia                  :
                                 :
                v.        :
                                 :
Ram Construction, Inc. and Ludgate   :
Engineering Corporation              :

## O R D E R

AND NOW, this 15th day of March, 2021, the order of the Court of Common Pleas of Montgomery County is hereby AFFIRMED.


                                            _____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita